**In re Lamar FAULKNER, Debtor.**

**Bankruptcy No. 95–50352.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Oct. 24, 1995.

Clyde W. Royals, Douglas, Georgia, for Debtor.

Daniell S. Landers, Waycross, Georgia, for Movant.

Sylvia Ford Brown, Chapter 13 Trustee, Savannah, Georgia.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Dismiss filed by General Motors Acceptance Corporation ("Movant"), a creditor in this Chapter 13 case. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). For the following reasons, the Court will deny the motion. These findings of fact and conclusions of law are entered in compliance with Fed.R.Bankr.P. 7052.

## FINDINGS OF FACT

Lamar Faulkner ("Debtor") filed his petition under Chapter 13 of the Bankruptcy Code on June 5, 1995. This is Debtor's second bankruptcy case. Debtor's previous case was dismissed on May 25, 1995, when Debtor failed to comply with the provisions of what is commonly referred to as a "strict compliance" order.

A strict compliance order is in the nature of a second chance. Such orders are appropriate where a debtor has missed several payments called for in a Chapter 13 plan and still indicates a desire to attempt to complete the plan. The Court enters such orders typically where a debtor demonstrates to the Court's satisfaction that the missed payments will be made up, and the debtor has the financial means to make future payments called for under the confirmed plan. While the debtor thereby avoids dismissal, or stay relief as the case may be, strict compliance orders contain conditions designed to automatically grant dismissal or stay relief without further hearing where a debtor misses another payment. Thus, the appellation "strict compliance" is used.

The strict compliance order entered in Debtor's previous case is designated "Consent Order On Trustee's Motion To Dismiss" and sets forth the terms of the agreement entered into between the Chapter 13 Trustee and Debtor. The Consent Order provides as follows:

On October 12, 1994, the Chapter 13 Trustee filed a Motion to Dismiss the pending Chapter 13 case. Subsequent to filing the Motion, Debtor, Counsel for Debtor, and the Chapter 13 Trustee have resolved the motion and agreed to the following terms:

Beginning with the payment due in December, 1994, Debtor will make payments to the Chapter 13 Trustee in the amount of $462.00 per month for the balance of the plan.

Debtor will submit a payment to the Chapter 13 Trustee in the amount of $600.00 on or before November 15, 1994.

Upon Debtors failure to strictly comply with any terms of this Consent Order, the Trustee shall advise the Court and the case will be dismissed without further notice or hearing.

The previous case was dismissed when Debtor missed several payments called for in the strict compliance order.[1] Movant now contends that Debtor's failure to comply with the strict compliance order constitutes willful failure to comply with an order of the Court, rendering Debtor ineligible for relief under

---

1. There are many variations on strict compliance orders. Sometimes this form of order is called a "Drop Dead" order. Any such order's purpose is to avoid immediate dismissal or other relief of a case in a circumstance where such relief has been shown to be appropriate after notice and hearing. Some variations require notice of default to be given to the debtor. None of the variations invite the debtor to offer any reason for the default. The actual occurrence of a default is the only prerequisite to granting the relief requested. This avoids the necessity for the movant to make another court appearance to obtain relief which had already been proven to be appropriate.

the Bankruptcy Code. Accordingly, Movant seeks dismissal of this Chapter 13 case.

## CONCLUSIONS OF LAW

■ Movant contends that Debtor is ineligible for relief under the Bankruptcy Code, and therefore this case must be dismissed. Debtor's eligibility for bankruptcy relief turns on this Court's interpretation of section 109(g)(1) which provides:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; ...

11 U.S.C. § 109(g)(1) (West 1995).

■ Congress created the eligibility requirements of section 109 to eliminate debtors who have demonstrated an intent to abuse the bankruptcy system by their conduct in a previous case. Congress sought to prevent abuse by identifying common factual scenarios indicative of abusive behavior. Section 109(g)(2) is designed to be a barrier to refiling for debtors who have previously dismissed a case after a creditor had asserted its rights to stay relief by filing a motion. Continued refilings solely to enjoy the benefit of the automatic stay and to frustrate a creditor's foreclosure rights is·an abuse of the system.

■ Similarly, section 109(g)(1) was created to prevent debtors from enjoying the protection of the Bankruptcy Code if they have abused the system by willfully violating a court order in a previous case. According to the language of section 109(g)(1), the focus of this Court's inquiry must be on the reason for the dismissal in the previous case. The previous dismissal must have been for "the willful failure of the debtor to abide by orders of the court." 11 U.S.C. § 109(g)(1). There are many reasons why a previous case may have been dismissed, but only the reason specified in section 109(g)(1) will support a bar to refiling.

■ In order to determine whether the dismissal in the previous case serves as a bar to the present case, the Court must consider the sources of the Court's authority and the purpose of section 109(g)(1). The authority of the Court to dismiss a case as punishment for failure to obey a court order is rooted in the Court's inherent power to punish contempt.[2] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing the inherent power of the Court to sanction abuse of process). Dismissal, therefore, can be a form of sanction used to punish contempt. *Elkin v. Fauver,* 969 F.2d 48 (3rd Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992) (the court may tailor a sanction for contempt to fit the circumstances).[3]

Congress gave the Court statutory control over its docket by declaring debtors who suffer a punitive dismissal ineligible for bankruptcy for 180 days. This power is in addition to the provisions of section 349 of the Bankruptcy Code, which provides in pertinent part:

> (a) *Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that

---

**2.** A contempt of court consists of the disregard of judicial authority. A court's ability to punish contempt is thought to be an inherent and integral element of its power and has deep historical roots. [footnote omitted]. Thus, the Supreme Court, in *Ex parte Robinson,* [footnote omitted] said:

The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice. The mo-

ment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. [footnote omitted].
11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE, § 2960, p. 366 (West 1995).

**3.** This is also the source of the Court's authority to award attorney's fees and costs for bad faith litigation. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (West 1995) (emphasis supplied).

■ Dismissals come in three different variations. The first, the administrative dismissal, is one which occurs either voluntarily or involuntarily when the Court dismisses a case without any finding of "cause."[4]

■ The second variation is where the Court enters an order after a finding of "cause" pursuant to section 349(a). The prejudice, if any, contained in any such order should be self-evident. The language of section 349(a) suggests by negative implication that the Court may prevent discharge in a later case of debts which were dischargeable in the case dismissed. Presumably, there are other possibilities for the kinds of sanctions which the Court might impose pursuant to a finding of "cause" under section 349(a).

■ The third variation, the one which is under consideration in this case, is where the Court does not make any finding of "cause" under section 349(a), but where the facts suggest that the Court intended the dismissal to be punitive in response to Debtor's willful violation of a court order. Without an order finding "cause" to serve as a reference, the section 109(g) dismissal is necessarily ambiguous. Since the language of section 109(g) is set out as an eligibility requirement, the determination cannot be made until the filing of the successive case. *In re Montgomery*, 37 F.3d 413 (8th Cir.1994).

These second and third types of dismissal are punitive in nature. Whether the Court attaches special conditions as a form of sanction pursuant to section 349(a), or whether, instead, the sanction is simply a barrier to refiling for six months pursuant to section 109(g), the Court's contempt power is being evoked to punish the debtor. Therefore, the analysis of this case must originate with a review of the Court's contempt power.

■ In order for a court to find that section 109(g)(1) applies to bar future filings, a court must find that the actions of the debtor in the previous case support a dismissal with prejudice. *Hall v. Vance*, 887 F.2d 1041, 1045 (10th Cir.1989). Bad faith defiance of a court order supports a dismissal with prejudice. *Id.* Therefore, where a previous dismissal was issued by the Court as a punitive sanction for the bad faith defiance of an order of the Court, such dismissal triggers the barrier to refiling contained in section 109(g)(1). As the Tenth Circuit Court of Appeals stated in *Hall v. Vance:*

> Ordinarily, a bankruptcy dismissal is without prejudice unless the court enters a specific order for good cause shown. 11 U.S.C. § 349(a). When the petitioner in bankruptcy is an individual or farmer, a dismissal is for cause if it results from "the willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1).

> Dismissal with prejudice is a severe sanction to which the courts should resort only infrequently. *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177 (7th Cir.1987). In *In re McDermott*, 77 B.R. 384 (Bankr.N.D.N.Y.1987), for example, a case with facts far more egregious than this, the bankruptcy court refused to grant the creditor's motion for a dismissal with prejudice although the court ultimately did dismiss under 11 U.S.C. § 1112(b)(2). In that case, nearly two years and three proposed plans of reorganization elapsed between the Chapter 11 filing and the creditor's motion to dismiss with prejudice. The debtors had also missed one of the court deadlines for filing

---

4. In fact, most involuntary dismissals are administrative in nature in that they are accomplished without any finding of "cause" under section 349(a). Many debtors are unable or unwilling to comply with the administrative requirements imposed by the Code because of living circumstances, life style choices and financial difficul-

ties. While these cases must be promptly eliminated from the system and, further, while their pendency is surely an annoyance to creditors, the dismissal of these cases is no more than an exercise of the Court's administrative power to manage cases.

a plan by over two months. Nevertheless, the court refused to dismiss with prejudice because the creditor had failed to make a showing of bad faith.

The Halls contend that the bankruptcy court abused its discretion when it dismissed their Chapter 11 petition with prejudice because there was no showing of cause. In fact, the court found that the Halls had filed their objections to proofs of claim and their Plan past the deadlines set by the court and that they had consistently filed their monthly reports late. The Halls' tardiness, however, does not support a finding of bad faith. The objections were filed only three days late and the Plan, only one day late. While the monthly reports were substantially more tardy, a fact which we do not condone, neither party moving for dismissal made a showing, beyond conclusory allegations, how the late filing of the monthly reports prejudiced them.

*Id.* at 1045.

■■■■■ All orders of the Court must be heeded to ensure the proper functioning of the system, but not all orders will call for punitive sanctions if a debtor fails to comply. Not every failure to comply with a court order evidences the bad faith which supports a dismissal with prejudice. "Courts should not allow section 109(g)(1) to be used as a technical device through which creditors can immediately liquidate a debtor's assets." *In re Bradley,* 152 B.R. 74, 78 (E.D.La.1993); *In re Hollis,* 150 B.R. 145, 148 (D.Md.1993) ("dismissal with prejudice is an extraordinary remedy"). The operation of section 109(g)(1) must be reserved for those situations in which the dismissal was an exercise of the Court's contempt power undertaken to punish the bad faith defiance of a court order. Failure to comply with a court order does not rise to the level of contempt without aggravating factors evidencing bad faith.

The present case illustrates this point. Debtor entered into a consent order requiring Debtor to make certain payments into the plan. Debtor alleges that he failed to make those payments, and the previous case was dismissed. Debtor failed to make the payments due to a medical problem which required Debtor to travel to another town for treatment. While the medical problem did not interrupt Debtor's income, Debtor testified that the expenses incurred in his treatment caused his personal finances to be disrupted. There is no question that Debtor violated a Court order and that Debtor was aware of his obligation to fund the plan. However, by failing to fund the plan, Debtor did not commit a sanctionable violation meriting more than an administrative dismissal. Each such case must be considered on its individual circumstances.

Violation of a salary order is not likely to be the basis of a finding of bad faith defiance. The ability of a debtor to fund a plan will often change due to the loss of a job, or the presence of unexpected expenses. In such a case, it is likely to be difficult to prove that the debtor willfully defied the Court rather than fund the plan as called for in the confirmation order. Dismissal in such a case is due to the administrative need to get rid of cases where the debtors are no longer funding the repayment plans. Unlike cases under Chapter 7, Chapter 13 cases have no reason to continue if the debtor is unable or unwilling to fund the repayment plan. In another case, for example, it might be easier to prove bad faith if the defiance of the order involved a failure of the debtor to turn over property or to cooperate in the administration of the estate by doing something which was possible and necessary. Where the dismissal was not ordered as a sanction to punish contempt, the purpose of section 109(g)(1) is not served by preventing a debtor from refiling.

■■■■ In this case, the strict compliance order is not the type of order which gives rise to the bar to refiling contained in section 109(g)(1). As stated above, in order for a previous dismissal to invoke section 109(g)(1) the dismissal must have been pursuant to the exercise of the Court's contempt power. While the defiance of a court order could evoke the application of section 109(g)(1), it is equally clear that orders calling for automatic dismissal of a case cannot, as a matter of law, form the basis of a dismissal with prejudice. The exercise of the Court's contempt power requires that the debtor be given no-

tice and the opportunity to be heard before such a dismissal can be ordered.[5]

 If a debtor is to be punished by the dismissal, rather than simply eliminated as an active case for administrative reasons, the Court must afford a debtor the same notice and opportunity to be heard as is specified in Fed.R.Bankr.P. 9020, if not in name, then at least in fact. Thus, automatic dismissals which do not give the debtor the opportunity to be heard prior to the dismissal cannot form the basis of a dismissal with prejudice barring a debtor from refiling for 180 days.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

General Motors Acceptance Corporation, a creditor in this Chapter 13, has moved this court to find that Debtor is ineligible to be a debtor in this case pursuant to 11 U.S.C. § 109(g). For the reasons stated in the findings of fact and conclusions of law published pursuant to Fed.R.Bankr.P. 7052 in the accompanying opinion, it is hereby

ORDERED that the Motion To Dismiss be and it hereby is DENIED; and it is hereby further

ORDERED that Debtor is not disqualified to be a debtor in this case pursuant to 11 U.S.C. § 109(g)(1).

**SO ORDERED.**

---

5. Fed.R.Bankr.P. 9020 provides:

(a) Contempt Committed in Presence of Bankruptcy Judge. Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) Other Contempt. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) Service and Effective Date of Order; Review. The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) Right to Jury Trial. Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

Fed.R.Bankr.P. 9020 (West 1995).