PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: SHIRLEY MAE TOMLIN,
Debtor.

COLONIAL AUTO CENTER,

Plaintiff-Appellee,

No. 95-2509

v.

SHIRLEY MAE TOMLIN,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-95-20-3, BK-94-1213-WA3-7)

Argued: December 4, 1996

Decided: February 3, 1997

Before ERVIN, WILKINS, and MOTZ, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Ervin and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** Mark Bennett Peterson, OGLE & PETERSON, Char-
lottesville, Virginia, for Appellant. Steven Shareff, Palmyra, Virginia,
for Appellee. **ON BRIEF:** Gail S. Ogle, OGLE & PETERSON, Char-
lottesville, Virginia, for Appellant.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this case a creditor asserts that an order dismissing "with prejudice" a bankrupt debtor's Chapter 7 petition precluded the debtor from subsequently seeking to discharge debts existing at the time of that order. Although a bankruptcy court certainly has the power to bar a debtor from further litigating the dischargeability of pending debts, the order at issue here is ambiguous. For this reason, we defer to the bankruptcy court's interpretation of its own order as one limiting subsequent filings, not forever prohibiting the right to seek a discharge of existing debt, and reverse the district court's contrary holding.

I.

On December 27, 1991, Shirley Mae Tomlin and her husband signed a retail installment contract with Colonial Auto Center, Inc. ("Colonial") to purchase a pickup truck. Eight months later, Colonial repossessed the truck, then sold it at public auction. The sale left a deficiency of $5,284.63. On May 28, 1993, Colonial obtained a state court judgment against Tomlin for the amount of the deficiency plus interest and court costs. Subsequently, Colonial obtained another judgment against Tomlin for $1,500.00 plus interest, arising from her failure to pay a deposit owing to Colonial. The balance remaining on these two judgments constitute the debt at issue in this case.

This is the sixth bankruptcy petition Tomlin has filed in the past seven years. On May 25, 1990, Tomlin and her husband filed a petition pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330 (1994). On August 20, 1990, the bankruptcy court confirmed the Tomlins' Chapter 13 plan (an amended plan was confirmed on November 14, 1990). On January 17, 1991, Union Planters National Bank ("Union Planters") moved for relief from the stay imposed pursuant to Chapter 13. On May 3, 1991, the bankruptcy court ordered the stay lifted. On July 15, 1991, the bankruptcy court granted the Tomlins' voluntary motion to dismiss.

On July 25, 1991, Tomlin individually filed a second Chapter 13 petition. She did not submit a confirmable plan and on September 12,

1991, Union Planters moved for relief from the stay. On December 6, 1991, the bankruptcy court granted Tomlin's motion to dismiss the petition.

On April 24, 1992, Tomlin, again with her husband, filed still another Chapter 13 petition. During the pendency of this petition, the Tomlins neither attended creditors' meetings nor timely filed bankruptcy schedules. On June 22, 1992, the bankruptcy court heard the trustee's motion to dismiss and ordered the Tomlins to cure all defaults by June 26, 1992. The Tomlins failed to abide by that order. On July 6, 1992, the bankruptcy court ordered the petition dismissed.

On September 18, 1992, Tomlin filed a pro se Chapter 7 petition to stop the foreclosure sale of her residence. 11 U.S.C. §§ 701-728 (1994). During the pendency of this petition, Tomlin did not pay the filing fee, did not attend the creditors' meeting, and did not file schedules. On November 13, 1992, the bankruptcy court dismissed the petition.

On December 17, 1992, Tomlin filed another pro se Chapter 7 petition again to stop the foreclosure sale of her residence. The next day, after Union Planters filed an emergency motion for relief from the stay, the bankruptcy court lifted the stay in an order in which it noted that it appeared that Tomlin had filed the petition in violation of 11 U.S.C. § 109(g) (1994). A month later, on January 21, 1993, the trustee filed a motion to dismiss Tomlin's petition"with prejudice" because she had caused unreasonable delay that was prejudicial to her creditors by failing to: appear at an initial creditors' meeting, timely file her schedules, or prosecute the bankruptcy case she had filed two months before. Tomlin did not respond in any way to the trustee's motion. After a hearing, which Tomlin did not attend, on February 11, 1993, the bankruptcy court issued a dismissal order, stating only that "[f]or the reasons set forth" in the trustee's motion, Tomlin's petition would be dismissed "with prejudice."

Twenty months later, on October 14, 1994, Tomlin filed another Chapter 7 petition; this time she was represented by counsel. On November 15, 1994, the bankruptcy court entered an order discharging Tomlin's debts.

3

Prior to that discharge order, Colonial filed the instant action to determine the dischargeability of debts pending as of the February 11, 1993 order dismissing "with prejudice" Tomlin's December 17, 1992 Chapter 7 petition. Colonial moved for summary judgment, asserting that the February 11 order barred Tomlin from subsequently seeking to discharge debts existing at that time.

After a hearing, the bankruptcy court issued an order and a memorandum opinion denying Colonial's motion for summary judgment. The bankruptcy court reasoned:

> [T]he [February 11, 1993] dismissal order, although ambiguously designated simply "with prejudice," was intended only to invoke the sanction set forth in the first paragraph of § 109(g) -- that the debtor be barred from filing another petition for 180 days. The matters addressed in the trustee's motion do not warrant imposition of the far more serious sanction of making all pending debts nondischargeable. The trustee did not request such a severe sanction in either the motion or at the hearing. And because the debtor did not appear at the hearing, the order dismissing the case was in effect by default.

(footnotes omitted).

Colonial appealed to the district court, which reversed. Colonial Auto Center, Inc. v. Tomlin, 184 B.R. 720 (W.D. Va. 1995). The district court recognized that, if there were "any ambiguity or obscurity" in an order, reference could properly be made to the "findings and entire record for determining what was decided." Id. at 727 (quoting Security Mut. Cas. Co. v. Century Cas. Co., 621 F.2d 1062, 1066 (10th Cir. 1980)). However, the district court found no "ambiguity or obscurity" in the bankruptcy court's order and so held the order had the "res judicata effect of precluding the discharge of debts in subsequent bankruptcy petitions." Id. Tomlin appeals.

II.

The first question presented here is a deceptively simple one: is the bankruptcy court's February 11, 1993 order ambiguous. Our review of this legal question is de novo.

4

Colonial asserts that "dismissed with prejudice" can have "only one reasonable interpretation," namely, the final dismissal of all claims that were, or could have been, brought in the action. Brief for Appellee at 8. Thus, Colonial claims that the February 11, 1993 order "dismissing Tomlin's prior Chapter 7 case `with prejudice' had the res judicata effect of precluding the subsequent discharge of her debts existing at the filing of the dismissed case." Id. at 6.

As Colonial points out, generally "[d]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir. 1991) (quoting Schwarz v. Felloder, 767 F.2d 125, 129 (5th Cir. 1985)). Moreover, principles of res judicata certainly apply to decisions of bankruptcy courts. See Katchen v. Landy , 382 U.S. 323, 334 (1966). Indeed, although the Bankruptcy Code establishes a general rule that dismissal of a case is without prejudice, it also expressly grants a bankruptcy court the authority to "bar the discharge, in a later case . . . of debts that were dischargeable in the case dismissed . . . ." 11 U.S.C. § 349(a) (1994); 3 Collier on Bankruptcy § 349.02[2] (15th ed. rev. 1994).

However, a bankruptcy court rarely uses its authority to bar the discharge of debts in a later case. See In re Robinson, 198 B.R. 1017, 1023 n.7 (Bankr. N.D. Ga. 1996). In any court, a dismissal order that bars subsequent litigation is a severe sanction warranted only by egregious misconduct. See Durham v. Florida E. Coast Ry. Co., 385 F.2d 366, 368 (5th Cir. 1967) (citing Link v. Wabash R.R. Co., 370 U.S. 626 (1962)). Given that the Bankruptcy Code's "central purpose" is remedial, i.e., to afford insolvent debtors an opportunity to "enjoy `a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,'" Grogan v. Garner, 498 U.S. 279, 286 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)), such an order is particularly devastating in a bankruptcy case. For this reason, a permanent bar to discharge is at times referred to as the "capital punishment of bankruptcy," for it "removes much of the benefit" of the bankruptcy system. In re Merrill, 192 B.R. 245, 253 (Bankr. D. Colo. 1995).

This "drastic sanction which may affect substantial rights of the litigant" is usually limited to "extreme situations." In re Martin-

Trigona, 35 B.R. 596, 601 (Bankr. S.D.N.Y. 1983) (citing <u>Flaska v. Little River Martin Constr. Co.</u>, 389 F.2d 885, 887 (5th Cir. 1968)). Generally, only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors -- for example, concealing information from the court, violating injunctions, or filing unauthorized petitions -- will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts. <u>See, e.g.</u>, <u>In re Moses</u>, 171 B.R. 789, 793-94 (Bankr. E.D. Mich. 1994); <u>Martin-Trigona</u>, 35 B.R. at 601-02; <u>In re Jerry's Blue Room</u>, 19 B.R. 963, 964 (Bankr. E.D. Pa. 1982).

Far more frequently, if a bankruptcy court disciplines a debtor, it will do so with a different sanction, one that is less drastic, but which is nonetheless often referred to as a dismissal with prejudice. This is a dismissal triggering 11 U.S.C. § 109(g) (1994), which temporarily bans the debtor from filing further petitions.[1] Section 109(g) provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

_____

[1] The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353, 98 Stat. 352, 269 (1984), added new subsection (f) to § 109 to provide a 180-day bar to filing. This was redesignated as subsection (g) by § 253 of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99-554, 100 Stat. 3105 (1986). Throughout this opinion, it will be referred to as § 109(g).

6

This statute was added to the Bankruptcy Code in 1984 to address the precise abuse of the bankruptcy system at issue here -- the filing of meritless petitions in rapid succession to improperly obtain the benefit of the Bankruptcy Code's automatic stay provisions as a means of avoiding foreclosure under a mortgage or other security interest. See, e.g., 1 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 18:14 at 18-55-56 (2nd ed. 1994); Jeffrey W. Morris, "Substantive Consumer Bankruptcy Reform in the Bankruptcy Amendments Act of 1984," 27 Wm. & Mary L. Rev. 91, 101 (1985); In re Faulkner, 187 B.R. 1019, 1022 (Bankr. S.D. Ga. 1995).

Thus, the Bankruptcy Code provides a bankruptcy court with authority both to bar subsequent discharge of existing debt and to bar successive petitions under § 109(g). Although the two sanctions differ dramatically in purpose and effect, bankruptcy courts often refer to both sanctions as dismissals "with prejudice."

Even prior to the addition of § 109(g) to the Bankruptcy Code in 1984, bankruptcy courts would order a debtor to cease filing successive petitions and refer to such an order as a "dismissal with prejudice." See, e.g., In re Damien, 35 B.R. 685, 687 (Bankr. S.D. Fla. 1983) (concluding that "every court that has considered the question has concluded that the Bankruptcy Court has discretion to dismiss with prejudice to refiling") (citing In re Sando, 30 B.R. 474, 476-77 (E.D. Pa. 1983)); In re Petro, 18 B.R. 566, 567 (Bankr. E.D. Pa. 1982) (finding debtors in contempt for filing an action within a year of the issuance of an order dismissing "with prejudice" their previous action).

The language of the 1984 amendments to the Bankruptcy Code apparently has increased the prevalence of this practice. In addition to the adoption of § 109(g), codifying the court's power to temporarily bar refiling, the 1984 amendments also revised the language of § 349, adding the emphasized language:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subse-

7

> quent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (emphasis added).

Indeed, this new language has prompted some speculation that Congress intended to eliminate a bankruptcy court's power to bar permanently the discharge of existing debt. See, e.g., Dennis Montali, "Important Bankruptcy Code Changes in the Bankruptcy Amendments and Federal Judgeship Act of 1984," 332 PLI/Comm 61, 68 (1984) ("New § 349(a) states that disqualification under § 109[g] constitutes a dismissal of the case with prejudice. Unfortunately, the amendment to § 349(a) can be read to exclude from the "dismissal with prejudice" label any other dismissal of a bankruptcy case since it now reads: `*** nor does the dismissal of a case *** prejudice the debtor with regard to the filing of a subsequent petition, except as provided in section 109[g] ***.'"); Michael T. Andrew, "Real Property Transactions and the 1984 Bankruptcy Code Amendments," 20 Real Prop. Prob. & Tr. J. 47, 72 n.107 (1985) ("It might be thought that the [language of § 349(a)] limits the prejudicial impact of a dismissal to that provided in new § 109[g] . . . .").

Our analysis of the plain language and "statutory scheme" of the statute, Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.), 27 F.3d 980, 982-83 (4th Cir. 1994) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989)), leads us to conclude that § 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have res judicata effect. Rather, the language of § 349, as amended, "seems to make clear that the court has the power to order" such a sanction "in circumstances other than those dealt with by new § 109[g]." Andrew at 72 n.107.

But what is equally clear is that it has become common bankruptcy practice to employ the phrase "dismissed with prejudice" to refer to a temporary bar to filing another petition. As the court observed in In re Robinson, 198 B.R. 1017 (N.D. Ga. 1996):

> The usual remedy for a bad faith filing is a dismissal pursuant to § 109(g), which works to prohibit the filing by a

8

debtor of any case under Title 11 for a period of 180 days. 11 U.S.C. § 109(g). <u>Such a dismissal is frequently and imprecisely referred to (only by bankruptcy practitioners) as a "dismissal with prejudice."</u>

<u>Id.</u> at 1022 (emphasis added); <u>see also</u> 2 <u>Norton</u> § 33:19 at 33-23 ("Although under Code § 349(a), a case may be dismissed without prejudice, where the court finds cause, the case may be dismissed with prejudice to refiling further petitions.").

Representative of the many cases in which a § 109(g) bar to refiling has been characterized as a dismissal "with prejudice" are several cases from courts in this circuit. <u>See, e.g.</u>, <u>Jolly v. Great W. Bank (In re Jolly)</u>, 143 B.R. 383, 385 (E.D. Va. 1992) ("Debtors argue that the bankruptcy court misapplied [Code provisions] in dismissing Debtors' case with prejudice for 180 days."), <u>aff'd</u>, 45 F.3d 426 (4th Cir. 1994); <u>In re Hollis</u>, 150 B.R. 145, 147 (D. Md. 1993) ("According to 11 U.S.C. § 349, dismissal of a bankruptcy petition is without prejudice, except as provided in section 109(g).") (footnote omitted); <u>Owings v. Doniff (In re Doniff)</u>, 133 B.R. 351, 354 (Bankr. E.D. Va. 1991) (ordering "dismissal with prejudice pursuant to 11 U.S.C. § 349" and enjoining the debtor "from filing a bankruptcy petition for a period of 180 days after dismissal").

There are also numerous similar cases from other jurisdictions. <u>See, e.g.</u>, <u>In re Jones</u>, 192 B.R. 289, 291 (Bankr. M.D. Ga. 1996) ("It is clear that the drafters of the Bankruptcy Code and Bankruptcy Regulations knew how to provide for a dismissal with prejudice. <u>See</u> 11 U.S.C.A. §§ 109(g) and . . . ."); <u>In re Armwood</u>, 175 B.R. 779, 787 (Bankr. N.D. Ga. 1994) ("The usual remedy for a bad faith filing is dismissal `with prejudice,' which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days."); <u>In re Gross</u>, 173 B.R. 774, 777 (Bankr. M.D. Fla. 1994) (As "the debtor's multiple bankruptcy filings, coupled with involuntary dismissals [was] cause to dismiss this case with prejudice," the court barred the debtor from filing another petition for two years without court permission.); <u>In re Standfield</u>, 152 B.R. 528, 539-40 (Bankr. N.D. Ill. 1993) ("The totality of the circumstances warrants the imposition of dismissal of this case with prejudice . . . and the prohibition of the filing of another case for a period of 180 days . . . ."); <u>In re Jourdan</u>, 108

9

B.R. 1020, 1021-22 (Bankr. N.D. Iowa 1989) (noting that "there is nothing to prevent a debtor from immediately refiling another Chapter 13 case . . . so long as the previous dismissal was without prejudice . . . ."); Lerch v. Federal Land Bank of St. Louis (In re Lerch), 94 B.R. 998, 1001 (N.D. Ill. 1989) ("The clear meaning of[§ 349] is that unless the court `for cause, orders otherwise,' the court may not dismiss a case with prejudice for a period beyond the explicit 180-day limitation found in Section 109(g).").**2**

Thus, notwithstanding Colonial's assertions, in the bankruptcy context a "dismissal with prejudice" does not have "only one reasonable interpretation." Rather, the term "dismissal with prejudice" in bankruptcy cases can either permanently bar discharge of certain debts or it can trigger the bar to filing successive petitions under § 109(g).

Of course, the actual language of a given order may eliminate any ambiguity. The bankruptcy court's February 11, 1993 order provided that, "[f]or the reasons set forth" in the trustee's motion to dismiss, the case was "dismissed with prejudice."

The order contains no specific reference to the§ 109(g) bar to filing successive petitions. Cf. In re Dandy Doughboy Donuts, Inc., 66 B.R. 457, 458 (Bankr. S.D. Fla. 1986). Nor does it state the period of time that it would be in effect, e.g., the 180-day period provided in § 109(g) or a longer period. Cf. Gross, 173 B.R. at 776; In re McKissie, 103 B.R. 189 (Bankr. N.D. Ill. 1989); In re Conley, 105 B.R. 116, 117 (S.D. Fla. 1989). Thus the order does not contain two of the more usual provisions indicating intent to invoke the bar to successive filings under § 109(g).

_____

**2** Of course, as the district court recognized, a bankruptcy court can impose sanctions under § 109(g) without dismissing a case "with prejudice." See Colonial Auto Center, 184 B.R. at 726. What is significant is that bankruptcy courts so frequently do characterize a dismissal intended to trigger § 109(g) as a dismissal "with prejudice." Indeed, some courts have been reluctant to impose § 109(g) sanctions if the underlying order was without prejudice. See In re Felts, 60 B.R. 736 (Bankr. W.D. Ky. 1986) ("It is the opinion of the court that the present petition is not violative of 11 U.S.C. Section 109[g] since the[prior] dismissal . . . expressly denoted that said dismissal was `without prejudice.'"); 1 Norton § 18:14 at 18-57.

However, sometimes bankruptcy courts do not include such indicia in dismissal orders but simply dismiss "with prejudice," when they nonetheless intend to bar refiling. See e.g., In re Peia, 145 B.R. 749, 750 (Bankr. D. Conn. 1992); In re Hollis, 150 B.R. 145, 146 (D. Md. 1996); In re Petro, 18 B.R. 566, 569 (Bankr. E.D. Pa. 1982). Colonial argues that such unqualified "with prejudice" dismissals do not provide precedent for concluding that the order at issue here was ambiguous. Brief for Appellee at 17-18. It emphasizes that the opinions accompanying the orders in Peia and Hollis indicated that all that was intended in those cases was a bar on refiling while in this case there is no similar clarification in an accompanying opinion or, indeed, any accompanying opinion at all. Id.

Although we agree that these cases do not provide a direct precedent for Tomlin's position, we nonetheless find them relevant. In distinguishing them, Colonial implicitly concedes that language in an accompanying opinion can change the meaning of what Colonial asserts would otherwise be an unambiguous order barring a debtor from subsequently seeking to discharge existing debts. This concession illustrates the slipperiness of a "with prejudice" dismissal in the bankruptcy context.

Nevertheless, Colonial asserts that the dismissal "with prejudice" order in this case was totally "unqualified" and thus unambiguous. Brief for Appellee at 9. Contrary to Colonial's assertions, the order at issue here is not a totally "unqualified" dismissal "with prejudice." Rather, the order provides that the case is dismissed "with prejudice" "for the reasons set forth" in the trustee's motion.

The trustee moved to dismiss Tomlin's Chapter 7 petition "with prejudice" only after the bankruptcy court had lifted the automatic stay in an order that specifically noted that Tomlin had apparently filed her petition "in violation of § 109(g)." Moreover, the trustee listed the following grounds in support of its motion to dismiss: (1) Tomlin's failure to appear at the initial creditors' meeting; (2) her failure to file her schedules on time, and (3) her failure to prosecute her September 18 bankruptcy case. These reasons hardly constitute examples of the egregious conduct and bad faith, which has generally been regarded as the necessary predicate to barring a debtor from forever seeking to discharge debts existing at the time of the dismissal

11

order. Cf. Martin-Trigona, 35 B.R. at 601-02; Moses, 171 B.R. at 793-94. Rather, the usual remedy, even for far more prevalent serial filing than that presented to the bankruptcy court in this case (in moving to dismiss, the trustee only mentioned one of Tomlin's earlier filings) is the § 109(g) temporary bar to filing. See, e.g., In re Penz, 121 B.R. at 602, 604-05 (Bankr. E.D. Okla. 1990); Gross, 172 B.R. at 777; Peia, 145 B.R. at 770.

Although when moving to dismiss "with prejudice" the trustee did not specifically invoke § 109(g), the bankruptcy court itself had invoked § 109(g) against Tomlin just two months before when lifting the automatic stay. Moreover, in moving to dismiss "with prejudice" the trustee asserted classic § 109(g) reasons for seeking the dismissal. Accordingly, we believe the bankruptcy court's order granting the trustee's motion to dismiss "with prejudice," "[f]or the reasons set forth" in that motion, is ambiguous. This, of course, does not mean that the order necessarily imposed a § 109(g) sanction. It may have triggered this bar or it may, as Colonial claims, have banned Tomlin from subsequently seeking the discharge of existing debt.

III.

Our remaining task is to determine the meaning of the ambiguous order at issue here. When an order is ambiguous, a court "must construe its meaning, and in so doing may resort to the record upon which the judgment was based." Spearman v. J & S Farms, Inc., 755 F. Supp. 137, 140 (D.S.C. 1990). See also Sec. Mut. Cas. Co., 621 F.2d at 1066 ("If there is any ambiguity or obscurity" in an order, "reference may be had to the findings and the entire record for the purpose of determining what was decided.").

The record here includes the 1995 memorandum opinion of the bankruptcy court interpreting its 1993 dismissal "with prejudice" to mean a bar to refiling under § 109(g). We have previously observed that we will defer to a district court's interpretation of its own order. See Anderson v. Stephens, 875 F.2d 76, 80 n.8 (4th Cir. 1989); Simmons v. South Carolina State Ports Auth., 694 F.2d 63, 66 (4th Cir. 1982). We must now decide whether similar deference should be accorded to a bankruptcy court's interpretation of its order.

12

Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973 (1st Cir. 1995), is instructive. There, the bankruptcy court had entered a court order confirming a reorganization plan, and subsequently interpreted it to protect the former lawyers of an insurance company. On appeal, the insurance company argued that the order did not afford their former lawyers this protection. The First Circuit rejected the insurance company's challenge, explaining:

> Even though our interpretation of the confirmation order essentially presents a question of law, the bankruptcy court in this case was interpreting its own order of confirmation. We think customary appellate deference is appropriate in these circumstances with respect to the bankruptcy court's determination that the confirmation order was sufficiently broad to confer "incidental" protection to[the lawyers].

Id. at 983 (emphasis added) (internal citation omitted).

We believe that the bankruptcy court's interpretation of its own order here similarly warrants "customary appellate deference." The bankruptcy court was "in the best position to interpret its own orders." Texas N.W. Ry. Co. v. Atchison, Topeka and Santa Fe Ry. Co. (In re Chicago, Rock Island & Pac. R.R. Co.), 860 F.2d 267, 272 (7th Cir. 1988). Accord Hastert v. Illinois St. Bd. of Elect. Comm'rs., 28 F.3d 1430, 1438 (7th Cir. 1993). The First Circuit noted in Monarch that the bankruptcy court "was directly engaged" in the earlier proceedings and thus had the "better vantage point" to make a determination on its earlier order. Monarch, 65 F.3d at 983. Similarly, the bankruptcy court here was "directly engaged" in Tomlin's earlier case, giving it a "better vantage point" from which to assess the order's meaning. Since "[t]he court best qualified to determine why it is dismissing a proceeding is the court doing the dismissing," we will give substantial deference to the bankruptcy court's analysis on its own order to dismiss. In re Bono, 70 B.R. 339, 343 (Bankr. E.D.N.Y. 1987). See also Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, Inc.), 773 F.2d 1166, 1168 (11th Cir. 1985) (expressing reluctance to overturn a court's interpretation of its own order because "[t]he Bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings.").

13

Examination of the record demonstrates that the bankruptcy court's interpretation of its order is reasonable in light of the facts of this case. The bankruptcy court noted that the trustee's motion did "not warrant imposition of the far more serious sanction of making all pending debts nondischargeable. The trustee did not request such a severe sanction in either the motion or at the hearing." Instead, the trustee cited Tomlin's failure to attend the initial creditors' meeting and failure to file her schedules. The trustee's motion stated that Tomlin had caused unreasonable delay and had prejudiced her creditors by this behavior. No doubt Tomlin's behavior constitutes an abuse of the protection afforded her by the bankruptcy system. Her purpose seemed clear; by continuously filing petitions, the automatic stay prevented foreclosure action on her home. This is the very behavior for which Congress formulated § 109(g). 1 Norton § 18:14 at 18-58-59. The bankruptcy court's order -- as interpreted by that court -- was the most appropriate sanction for the abuse Tomlin committed. By prohibiting her from filing another petition immediately after the dismissal of the case, the court prevented Tomlin from committing the very behavior that triggered the sanctions in the first place.**3**

Nor does the fact that the order at issue here contains no finding of willfulness undermine the bankruptcy court's conclusion it was intended to trigger a § 109(g) sanction. Colonial is quite correct that "the plain language" of § 109(g) bars a subsequent filing sanction only if the bankruptcy court finds a previous case was dismissed

_____

**3** Of course, similar conduct has also been found to merit the imposition of a permanent bar to discharge the debts existing at the time of the dismissal. Some courts seem to have equated the "willful failure" to obey a court order necessary to trigger a § 109(g) sanction with the "bad faith" leading to a permanent bar to the discharge of the debts. See, e.g., In re McClure, 69 B.R. 282, 284-85 (Bankr. N.D. Ind. 1987). However, the majority of bankruptcy courts have sought clear evidence of "bad faith" before proceeding to prohibit a debtor from ever discharging then existing debts, evidence that goes beyond mere willfulness. Jerry's Blue Room, 19 B.R. at 964 (bad faith actions merit"serious" and "rarely invoked" remedy of dismissal with prejudice); Moses, 171 B.R. at 798 (same); Martin-Trigona, 35 B.R. at 601 (same). Cf. Hall v. Vance, 887 F.2d 1041, 1045 (10th Cir. 1989) (filing monthly reports and plan late does not constitute evidence of bad faith, and thus, no dismissal with prejudice can be imposed).

14

because of a debtor's "willful failure" to abide by a court order. Brief for Appellee at 15. But that finding need not be made at the time of the earlier dismissal; it can be made when the bankruptcy court is later called upon to determine if § 109(g) bars a subsequent filing. See Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 415 (8th Cir. 1994); Robinson, 198 B.R. at 1023 n.8; In re Faulkner, 187 B.R. 1019, 1023 (S.D. Ga. 1995); In re Pappalardo, 109 B.R. 622, 626 (Bankr. S.D.N.Y. 1990). For example, in Montgomery, 37 F.2d at 414-15, the bankruptcy court's order stated only that the case was dismissed because the debtor failed to attend a creditors' meeting; there was no finding of willfulness. Within 180 days, the debtor sought to file another petition. Id. at 414. At that time, the bankruptcy court found that the prior dismissal was based on the debtor's willful failure to follow a court order and so § 109(g) barred the subsequent filing. Id. at 415. The Eighth Circuit affirmed explaining, "[a] finding of willfulness was necessary only when the bankruptcy court dismissed the second petition." Id. See also Faulkner , 187 B.R. at 1023 ("Since the language of section 109(g) is set out as an eligibility requirement, the determination cannot be made until the filing of the successive case.").

In the case at hand, the trustee's motion clearly indicated that Tomlin's behavior demonstrated a willful failure to prosecute her case. That the bankruptcy court made no finding of willfulness in the 1993 order is therefore not determinative. If Tomlin had filed a subsequent action within 180 days of the previously dismissed action, the court could have made that finding at that time based on a review of Tomlin's record in the earlier proceedings.

Finally, Colonial heavily relies on In re Smith , 133 B.R. 467 (Bankr. N.D. Ind. 1991), as compelling the conclusion that the order at issue here must be one prohibiting Tomlin from seeking the discharge of existing debt. That reliance is misplaced. Although Smith resolves differently the same issue we have grappled with here, it is no way inconsistent with our decision. In Smith when the debtors and trustees in a Chapter 7 case failed to come to an agreement, the trustee moved the bankruptcy court to dismiss the case or to deny discharge. Judge Riegle of the bankruptcy court granted the motion, and issued an order stating "that this case be dismissed with prejudice." Id. at 468. Eighteen months later, the debtors filed another Chapter 7 peti-

15

tion and the trustee again moved to dismiss, asserting the earlier dismissal "with prejudice" precluded the debtors"from ever seeking further relief" under the Bankruptcy Code. Id. A different bankruptcy judge, Judge Grant, properly rejected that argument and then interpreted Judge Riegle's order to mean a permanent bar on discharging the debts in question at the time of the previous filing: "The dismissal of a bankruptcy case with prejudice `denies a debtor [the] future discharge of debts dischargeable in that particular case.'" Id. at 470 (quoting Frieouf v. United States (In re Frieouf), 938 F.2d 1099, 1103 (10th Cir. 1991)).

Smith provides no authority for Colonial's position here because the order in Smith, unlike that here, apparently was an unadorned dismissal "with prejudice." Moreover, the Smith order was issued in response to the trustee's request to "dismiss the case or . . . deny the discharge." 133 B.R. at 467. In contrast, the trustee in the instant case never requested that Tomlin be denied the right to seek to discharge her debts in the future, but instead asked that her case be dismissed on typical § 109(g) grounds. Thus, the Smith order differs from that presented here in that it apparently was an unqualified and unambiguous order preventing the debtor from subsequently seeking to discharge existing debt.

Even if the Smith order were identical to that at issue here (and there is no indication it was), our holding would still not be inconsistent with that of Smith. Our conclusion that the order before us is ambiguous does not signify that it was definitively a § 109(g) order. We deferred to the interpretation of the court that fashioned the order to resolve this ambiguity. In Smith, the court that fashioned the order never opined as to its meaning. If it had done so, a court subsequently examining the order might well have deferred to the original court's interpretation, as we have done here.

IV.

For these reasons, we reverse the order of the district court, which had reversed the bankruptcy court, and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED

16