**In re Sheila R. JONES, Debtor.**

**No. 03–80038–WRS.**

United States Bankruptcy Court,
M.D. Alabama.

Feb. 18, 2003.

M. Joanne Camp, Opelika, AL, for Debtor.

Curtis C. Reding, Montgomery, AL, trustee.

### Memorandum Decision

WILLIAM R. SAWYER, Chief Judge.

This Chapter 13 case came before the Court on an Order to the Debtor to Appear and Show Cause. (Doc. 8). The case was called for hearing on the order on February 12, 2003, at the United States Bankruptcy Court, Opelika, Alabama. For the reasons set forth below, this Chapter 13 Bankruptcy case is dismissed with prejudice pursuant to 11 U.S.C. § 349(a). In addition, the Debtor is enjoined from filing a petition under any Chapter of the Bankruptcy Code, in any court, for a period of five years from the date of this order.

### I. Background

The instant bankruptcy petition is the fifth Chapter 13 bankruptcy petition that the Debtor has filed in this Court in the past five years. All of the prior cases were dismissed prior to completion of the Chapter 13 plan. In fact, the two most recent cases both were dismissed at the confirmation hearing because the Trustee had not received any payment from the Debtor. Unsecured creditors received no payments during the pendency of any of these cases and secured creditors received payments in only one of the cases. A review of these cases leads the Court to conclude that the Debtor is abusing the protections of the Bankruptcy Code and that dismissal with prejudice and an injunction against refiling are the appropriate remedies in this case. A brief summary of the Debtor's history in this Court follows.

Insofar as the Court can determine, Jones's first Chapter 13 petition was filed on June 4, 1998. (Case No. 98–2703). Sheila Jones was a joint debtor in that case. That case was dismissed on January 6, 1999, because the Debtors were not making substantial progress under the confirmed or modified Chapter 13 plans. (Doc. 17). The record reflects that the Debtors had a 28% pay record in that case and that there were several months in which the Trustee received no payments from the Debtors. The Final Account of the Trustee in Case No. 98–2703 reflects gross receipts of $1,235.00. (Doc. 21). Of that amount, the secured creditors received a total of $51.96 in interest, they received nothing on their principal claims. The unsecured creditors received no payments.

Jones next filed a Chapter 13 petition on January 25, 1999, just three days after the prior case was closed.[1] (Case No. 99–387). Again, Sheila Jones was a joint debtor with her husband Gralin Jones. That case was dismissed on October 17, 2000, on the Trustee's motion. (Doc. 19). The motion to dismiss was based on a material default by the Debtors with respect to the terms of the confirmed Chapter 13 plan. (Doc. 19). The Debtors did not object to the motion to dismiss and the case was closed on December 6, 2000. (Doc. 23). The Final Account of the Trustee in Case No. 99–387 reflects gross receipts of $4,885.00. (Doc. 22). Of that amount, the secured creditors received total payments of $3,075.16. The unsecured creditors received no payments.

Debtor filed her third Chapter 13 petition on October 18, 2001. (Case No. 01–

---

1. The Court closed case no. 98–2703 on January 22, 1999. Prior to closing, Debtors filed a Motion to Rehear Confirmation of the Modified Plan. That motion was denied by order of this Court on January 15, 1999, ten days before the Debtors filed the second bankruptcy petition.

6569). This time, the Debtor filed individually and not as a joint debtor. The petition does not list either of Debtor's two prior cases.[2] This case was dismissed three months later, at the hearing on confirmation of the Chapter 13 plan on January 28, 2002. (Doc. 15). The Court dismissed the case with a 180–day injunction against refiling because the Debtor did not attend the scheduled meeting of creditors and had not commenced making payments to the Trustee. The final account of the Trustee reflects gross receipts of only $40.00 (a portion of the filing fee). The creditors received no payments during the three month period that this case was in existence.

The 180–day injunction was subsequently lifted on March 19, 2002.[3] (Doc. 26). Debtor then proceeded to file her fourth Chapter 13 case less than one month later, on April 2, 2002. (Case No. 02–80459). Debtor filed this case individually and not as a joint debtor. As in the prior case, this case was dismissed three months later

at the hearing on the confirmation of the plan on July 11, 2002. The Court dismissed the case with a 180–day injunction against refiling because the Debtor had not made any payments to the Trustee. (Doc. 19). The final account of the Trustee reflects gross receipts in the amount of $40.00 (a portion of the filing fee). The creditors received no payments during the time that this case was in existence.

Prior to dismissal of the fourth bankruptcy case, the Debtor's then-landlord, John Harris, filed a motion to lift stay because the Debtor was not making her post-petition rent payments. (Doc. 15). The motion alleged, and the creditor contended at the confirmation hearing, that Debtor had not made any rent payments since February, 2002. During this time, at least three post petition rent payments had come due.

Finally, the Debtor filed the instant Chapter 13 petition on January 8, 2003, exactly 181 days after the order dismissing

---

**2.** A petition in bankruptcy must disclose all filings made within the last six years. In this case, two filings should have been disclosed, however the petition states "none." Failure to disclose prior filings is a serious matter and a strong indication of bad faith. In other cases, this Court has imposed sanctions on counsel when the misstatement was intentional. *See In re Dent*, 275 B.R. 625, 629 (Bankr. M.D.Ala.2002). That issue is not before the Court at the present time, however the Court considers the omission of the prior cases to be specific evidence of the Debtor's bad faith. The Debtor is required to sign a declaration that the information contained in the petition is true and correct. In this case, the Debtor knowingly filed a petition containing false information.

**3.** Debtor's original counsel in case no. 01–6569 was James K. McCollum, Jr. During the pendency of the case, Mr. McCollum was called to active duty military service and closed his law practice. After the case was dismissed but before it was closed by the Court, Charles Ingrum filed a notice of ap-

pearance in the case and a Motion for a New Trial. (Docs. 17 & 18). The motion was called for hearing on March 13, 2002, at the United States Bankruptcy Court, Opelika, Alabama. The Court construed the Motion for New Trial as a Motion to Reconsider the Court's order dismissing the case with a 180–day injunction. The Court then granted the debtor's request to lift the injunction. (Doc. 26).

The Court notes that Mr. McCollum filed a response to the Motion for a New Trial filed by Mr. Ingrum on behalf of the Debtor. (Doc. 21). Mr. McCollum disputes the allegations set forth in the Motion for a New Trial and the accompanying affidavit. Specifically, Mr. McCollum alleges that the Debtor had no intention of pursuing this case from the start and that the sole purpose in filing for bankruptcy protection was to prevent eviction from an apartment.

The Court further notes that Mr. Ingrum represented the Debtor in the two prior bankruptcy cases, as well as later, in the fourth bankruptcy case (case no. 02–80459).

her prior bankruptcy case with a 180–day injunction against refiling. (Case No. 03–80038). It appears that this case was filed as the Lee County Sheriff was getting ready to evict the Debtor from her rental premises.[4] The evidence adduced at the show cause hearing shows that Debtor has not made any rent payments to her landlord, Arlene Rivers, since remitting a partial payment in the month of November, 2002. She did not make the post-petition rent payment that came due on February 1, 2003, though her plan proposed that she would make these payments directly to Ms. Rivers. Additionally, the Trustee's records reflect that the Debtor made one payment equivalent to three weekly payments. At the time of the show cause hearing, the Debtor's pay record to the Trustee was already two weeks behind.

The Court also notes that this fifth petition initially did not disclose any of the Debtor's prior filings. As noted above, a petition in bankruptcy must disclose all filings made within the past six years. The petition contains an incomplete entry, indicating a possible filing in the Middle District of Alabama, however, none of the case numbers or dates of filing are indicated. (Doc. 1). Debtor's counsel subsequently amended the schedules to show the prior filings on January 14, 2003.[5] (Doc. 6). However, the amended schedules only disclose three of the four prior cases in this district. Again, the Court considers the Debtor's failure to . disclose the prior filings to be a strong indication of bad faith.

Upon consideration of the instant bankruptcy case, together with the four prior cases, the Court finds that the Debtor's history demonstrates a serious abuse of the protections of the Bankruptcy Code. Specifically, the Court finds that the Debtor has engaged in a pattern of "serial filing," merely to delay creditors with no intention of completing a plan. That the two prior cases were dismissed at confirmation because the Trustee had not received any payments or participation from the Debtor is strong evidence of this intent. By simply filing a bankruptcy petition, the Debtor is able to avoid paying her creditors for another two to four months. In the three cases she has filed individually (01–6569; 02–80459; and 03–80038), it appears to have been the Debtor's intention to avoid eviction actions brought by her landlords for non-payment of rent. By filing the petition, she is able to stay an eviction proceeding (or prevent one from commencing) and also avoid paying rent until the Court holds a hearing on the confirmation of the proposed plan some months later.

In each of these five cases the Debtor has taken no meaningful action to advance a successful adjustment of her debts as contemplated by Chapter 13. Rather, the Court finds that her sole purpose has been to frustrate and delay her creditors.

## II. Conclusions of Law

 There is no *per se* rule against serial filings in bankruptcy. While the Court does not suggest that successive filings always constitute bad faith, multiple filings may be evidence of such. *In re Dent,* 275 B.R. 625, 632 (Bankr.M.D.Ala. 2002) (citing *In re Vanfossen,* 258 B.R.

---

4. Debtor entered into the rental application with her current landlord, Arlene Rivers, on July 15, 2002, immediately after her fourth bankruptcy case was dismissed. The landlord alleges that she was informed of the instant bankruptcy petition on the morning of the scheduled eviction. (Doc. 3).

5. The amended schedules were filed after the landlord filed a letter stating that there had been at least two prior bankruptcy cases. (Doc. 5).

814, 818–21 (Bankr.N.D.Ala.2001)). In the instant case, there is no question that Debtor's conduct is a blatant abuse of the automatic stay provisions of the Bankruptcy Code. By repeatedly filing petitions and making little or no effort to comply with the terms of the Chapter 13 plans she has proposed, Debtor is making a mockery of the bankruptcy system. The automatic stay provisions of Section 362 were not "intended to be used as a sword by the rapacious." *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir. 1986).

### A. Dismissal With Prejudice

Based on the egregious behavior of the Debtor and the Court's finding of bad faith, the Court has concluded that the instant case should be dismissed pursuant to 11 U.S.C. § 1307(c). Because the Court finds that the Debtor filed the instant case in bad faith and with the sole intent of delaying her creditors, the dismissal is with prejudice pursuant to 11 U.S.C. § 349(a).

Section 349(a) states as follows:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Pursuant to Section 349, the vast majority of bankruptcy cases which are dismissed are dismissed without prejudice and the debts in existence at the time of the dismissal may be discharged in a future case. A dismissal with prejudice is a measure rarely employed by this Court. However, the Court finds that there is sufficient cause to dismiss the instant case with prejudice. Therefore, in the event that the Debtor files a bankruptcy case in the future, the debts presently owed are nondischargeable pursuant to this order of dismissal.

### B. Five Year Bar Against Refiling

Because of the Debtor's pattern of conduct, repeated instances of bad faith and lack of meaningful participation in the prosecution of any of her five cases, the Court has determined that further measures are required to protect creditors and preserve the integrity of the Bankruptcy Court. For this reason, the Debtor is enjoined from filing a bankruptcy petition anywhere in the United States for a period of five years from the date of this order.

In imposing the five year bar against refiling, the Court is specifically relying upon its powers under Section 105(a) of the Bankruptcy Code. Section 105(a) gives the Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The 180–day bar against refiling contained in Section 109(g) is inapplicable to the instant case.

As noted above, this case is dismissed with prejudice pursuant to 11 U.S.C. § 349(a). The Court finds that the reference to Section 109(g) contained in Section 349(a) does not modify or limit that Section if the dismissal is "for cause." *See Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 334–42 (2d Cir.1999) (examining the statutory construction of Section 349(a)) (citations omitted). Nor is the bar imposed in this case subject to the temporal limitations of Section 109(g)(1) itself because the case is not dismissed pursuant to that section.

The Court finds that there is sufficient authority for the proposition that a bankruptcy court may, in appropriate cases, impose injunctions in excess of 180 days. The Court takes this opportunity to

join with a majority of other courts "which derive from §§ 105(a) and 349(a) of the Code a bankruptcy court's power, in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days ... [and] concluding that § 109(g) does not impose a temporal limitation upon these other sections." *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 339 (2d Cir.1999); *see also In re Tomlin*, 105 F.3d 933, 938 (4th Cir.1997) (concluding "that § 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have a res judicata effect").[6]

In *Casse*, the Second Circuit found that the bankruptcy court's order of dismissal with prejudice was intended to preclude future filings by the Debtors for an indefinite period of time and was authorized by the Bankruptcy Code. *Id.* at 341. The order of dismissal in that case did not state a specific duration for the prohibition against refiling, but rather just barred all future filings by the Debtors. *Id.* at 334, n. 4. The Court reasoned that the bankruptcy court intended to impose a bar of sufficient length to allow the creditor an opportunity to foreclose on property of the Debtors. *Id.* Though the Court found that prohibitions against refiling could exceed 180–days, it did not reach the question of whether a bankruptcy court could impose a permanent prohibition. *Id.*

In *In re McCoy*, the Bankruptcy Court for the Southern District of Ohio did impose a permanent injunction against refiling. *In re McCoy*, 237 B.R. 419, 423 (Bankr.S.D.Ohio 1999) (ordering that the Debtor is "enjoined from filing a bankrupt-

cy petition, individually and/or jointly, anywhere in the United States at any time in the future"). In that case, the Debtor filed eight petitions over an eight year period and fully prosecuted only one of the cases (a Chapter 7 petition). *Id.* at 419–22. In addition, the Debtor repeatedly failed to file required schedules and statements, failed to appear at meetings of creditors, and filed cases in violation of previous injunctions against refiling. *Id.* The Court concluded that the egregious behavior merited extraordinary measures and dismissed the case with prejudice, imposed a lifetime ban against refiling, and imposed monetary sanctions. *Id.* at 423.

In another case, the Bankruptcy Court for the Southern District of Florida permanently barred Debtors from subsequent bankruptcy filings. *In re Millers*, 90 B.R. 567, 568 (Bankr.S.D.Fla.1988) (ordering that the case be dismissed "with prejudice to the Debtor ever refiling a bankruptcy proceeding in this or any other bankruptcy court within the United States of America"). That dismissal was based upon the Debtors' failure to appear at meetings of creditors, failure complete accurate schedules and statements, failure to list prior bankruptcy filings and alteration of names and social security numbers. *Id.* The Court concluded that "the Debtors have grossly abused the bankruptcy process in the United States and have flagrantly violated the rules relating thereto, all of which merits the dismissal of this case with prejudice to the refiling of any bankruptcy proceedings by these Debtors at any time in the future." *Id.*

In the instant case and as set forth above, the Court finds the Debtor's tactics

---

**6.** *See e.g., In re McNichols*, 254 B.R. 422, 436 (Bankr.N.D.Ill.2000) (prohibiting Debtor from refiling another bankruptcy case for one year); *In re Robertson*, 206 B.R. 826, 831 (Bankr.E.D.Va.1996) (imposing 417 day bar against refiling); *In re Gros,* 173 B.R. 774, 777 (Bankr.M.D.Fla.1994) (prohibiting Debtor from refiling for two years unless specifically authorized by the Court); *In re Stathatos,* 163 B.R. 83, 87–88 (N.D.Tx.1993) (affirming bankruptcy court order imposing two year bar against refiling).

to be similarly abusive of the bankruptcy process. The Court has determined that extraordinary measures are required in order to prevent the Debtor's continued efforts to delay and frustrate her creditors through a series of bankruptcy petitions, filed in bad faith, with no intention on the part of the Debtor to comply with the terms of the proposed plans. The Court is convinced that the imposition of a five year bar against refiling is the best way to deter Debtor's abusive conduct and restore the integrity of the bankruptcy process.

### III. Conclusion

For the reasons set forth above, the Chapter 13 case is dismissed with prejudice pursuant to Section 349(a) and the Debtor is enjoined from filing a bankruptcy petition anywhere in the United States for a period of five years. The Court will enter a separate order dismissing the case and imposing the injunction.