**In re Pamela Joyce NORTON, Debtor.**

No. 04–22581.

United States Bankruptcy Court,
D. Utah.

Jan. 20, 2005.

Cy H. Castle, Assistant U.S. Trustee, Salt Lake City, Utah, for Charles F. McVay, United States Trustee, Movant.

Pamela Joyce Norton, Debtor pro se.

## MEMORANDUM DECISION GRANTING UNITED STATES TRUSTEE'S AMENDED MOTION TO DISMISS CASE WITH PREJUDICE PURSUANT TO 11 U.S.C. § 349(a)

JUDITH A. BOULDEN, Bankruptcy Judge.

Nine unsuccessful Chapter 13 bankruptcy cases in as many years—this is the filing history of Pamela Joyce Norton (the "Debtor"). She is what bankruptcy courts refer to as a "serial filer," or a debtor who files successive bankruptcy petitions with-

out success. After reviewing the Debtor's filing history, this Court has determined that because of the Debtor's defiant and abusive behavior, the extraordinary sanction of permanently barring the Debtor's debts from future discharge under 11 U.S.C. § 349(a)[1] is "necessary to preserve the integrity of the bankruptcy process,"[2] and the motion of United States Trustee (UST) requesting that relief is granted.

In 1991, the Tenth Circuit Court of Appeals issued *Frieouf v. United States*[3] limiting the sanctions available under § 349(a) to either dismissal of a case and the denial of a debtor's *future discharge* of debts dischargeable in that particular case, or dismissal of a case and the denial of *future access* to the bankruptcy court for 180 days as provided in § 109(g). Since that time, a majority of courts have refused to follow the narrow statutory construction set forth in the second type of dismissal allowed in *Frieouf*,[4] and have instead affirmed lower courts' decisions that bar future access to the court beyond the § 109(g) 180-day limit.[5] Some courts have interpreted *Frieouf* as allowing *only* § 109(g) 180-day dismissal, and disallowing a dismissal that denies a debtor's future discharge.[6] Perhaps because of this misinterpretation, very little case law exists in the Tenth Circuit defining and developing the § 349(a) dismissal with prejudice provision,[7] or further defining what constitutes "cause" for dismissal under § 349(a). Because of this dearth of case law, this opinion distinguishes § 349(a) from other Bankruptcy Code (the "Code") provisions that allow for dismissal, and examines what type of debtor misconduct

1. All future references are to Title 11 of the United States Code unless otherwise indicated.

2. *In re McCoy*, 237 B.R. 419, 420 (Bankr. S.D.Ohio 1999) (denying the debtor all future access to the bankruptcy system and barring his debts from discharge after he filed eight unsuccessful bankruptcy cases in which he failed to file the requisite statement of financial affairs and schedules, and plans. The debtor also failed to appear at his § 341 creditors' meetings, and failed to accurately disclose prior filings).

3. 938 F.2d 1099 (10th Cir.1991), *cert denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992).

4. *See e.g. Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2nd Cir.1999) (disagreeing with *Frieouf's* conclusion that courts cannot use their § 105(a) equitable powers to bar a debtor from filing a subsequent case beyond the limits provided for in § 109(g), and stating that the 10th Circuit's view is the minority view); *In re Robertson*, 206 B.R. 826, 830 n. 4 (Bankr.E.D.Va.1996) (declining to follow *Frieouf* and finding cause to dismiss with prejudice barring the debtor from refiling for 417 days); *Javens v. Ruskin*, No. 99–74189, 2000 WL 1279189 at *2 (E.D.Mich. Aug. 24, 2000) (affirming bankruptcy court's decision to bar debtor from refiling for more than 180-day period in § 109(g)) (unreported); *Benefield v. United States Trustee*, No. 3–91–1421–H, 1991 WL 542279 at *2 (N.D.Tex. Oct. 25, 1991) (refusing to follow *Frieouf's* interpretation of § 349(a)); and *Jolly v. Great Western Bank*, 143 B.R. 383, 388 (Bankr. E.D.Va.1992) (barring the debtor from refiling for 180 days), *aff'd* 45 F.3d 426 (table), 1994 WL 717626 (1994) (unpublished).

5. *Casse*, 198 F.3d at 336.

6. *Robertson*, 206 B.R. at 830 n. 4 (stating "[s]ome courts have asserted that a court's ability to dismiss with prejudice is only possible within the limits set out in § 109(g)"); *Javens*, No. 99–74189, 2000 WL 1279189 at *2 (broadly stating that "[u]nder the Tenth Circuit's interpretation, a Bankruptcy Court lacks authority to dismiss a case with prejudice, except for when section 109(g) applies").

7. *See e.g., Cooper v. Kramer (In re Cooper)*, 153 B.R. 898, 900 (D.Colo.1993) (holding that *Frieouf* allows a court to permanently enjoin debtors from obtaining a future discharge of a certain debt owed to a creditor), *aff'd* 13 F.3d 404 (10th Cir.1993) (table), 1993 WL 523197 (10th Cir.1993) (unpublished).

warrants a "for cause" dismissal with prejudice under § 349(a) as allowed under *Frieouf.*

## I. FACTS

In the last eight years, the Debtor has filed nine *pro se* Chapter 13 bankruptcy petitions.[8] She filed three cases in 1996; two cases in 1998; and one case in years 2001, 2002 and 2003 respectively. The current case is her ninth. Two of the nine cases have been dismissed with prejudice under § 109(g). The remaining six cases were dismissed because the Debtor failed to: file a statement of financial affairs, schedules (collectively "statements and schedules") and a plan; failed to attend the first meeting of creditors; and failed and make plan payments. The Debtor's complete bankruptcy filing history is as follows:

| Case | Chapter | Date Filed | Date Dismissed | Reason for Dismissal | § 109(g) Dismissal |
|---|---|---|---|---|---|
| 96–24048 | Chapter 13 *pro se* | 6/18/1996 | 8/8/1996 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | |
| 96–26315 | Chapter 13 counsel | 9/19/1996 | 11/7/1996 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | |
| 96–28779 | Chapter 13 *pro se* | 12/11/1999 | 2/12/1997 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | X |
| 98–22412 | Chapter 13 *pro se* | 3/4/1998 | 4/23/1998 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | |
| 98–26012 | Chapter 13 *pro se* | 6/3/1998 | 7/23/1998 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | |
| 01–38843 | Chapter 13 *pro se* | 12/18/01 | 2/28/2002 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | |
| 02–25781 | Chapter 13 *pro se* | 4/9/2002 | 7/17/2002 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. | X |

**8.** The Debtor also filed a Chapter 11 petition in 1992 which was dismissed with prejudice under § 109(g).

| 03–36089 | Chapter 13 pro se | 9/22/2003 | 12/10/2003 | Debtor failed to file statements, schedules, or a plan, make initial plan payment, and attend § 341 meeting. |
| --- | --- | --- | --- | --- |
| 04–22581 Current Case | Chapter 13 pro se | 2/23/2004 | 5/24/04 | Debtor failed to file statements, schedules or a plan, make initial plan payment, and attend § 341 meeting. Dismissed but Court retained jurisdiction to hear UST's motion to dismiss under § 349(a). |

*First 1996 Chapter 13 Case.*

1. On June 18, 1996, the Debtor filed her first *pro se* chapter 13 bankruptcy case.

2. The Debtor filed her case on the date scheduled for a non-judicial trustee's sale of her home by Aames Mortgage Company.

3. The Debtor failed to file any statements, schedules and a plan, make any plan payments, attend her § 341 meeting. No money was ever paid into a plan.

4. The case was dismissed because the Debtor failed to comply with the requirements of §§ 511, 514, or 525.

*Second 1996 Chapter 13 Case.*

5. Thirty-eight days after her first 1996 case was dismissed, the Debtor filed her second *pro se* chapter 13 case.

6. The Debtor filed this case the day before the non-judicial trustee's sale of her home by The Scandinavian Fund, L.C.

7. The Debtor failed to file any statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

8. This case was dismissed because the Debtor failed to comply with the requirements of §§ 511, 514, or 525.

*Third 1996 Chapter 13 Case.*

9. Thirty-four days after her second case was dismissed, the Debtor filed her third *pro se* chapter 13 case.

10. The Debtor filed this case an hour and a half prior to the non-judicial trustee's sale of her home by The Scandinavian Fund, L.C.

11. The Debtor again failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

12. This case was dismissed with prejudice. The Court barred the Debtor from filing another bankruptcy petition for 180 days because the Debtor had filed the case in bad faith.

*First 1998 Chapter 13 Case*

13. The Debtor filed her fourth *pro se* chapter 13 case in early 1998.

14. The Debtor's petition stated she had between 1 to 15 creditors and liabilities between $500,000 to $999,000.

15. The Debtor failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

16. This case was dismissed for the Debtor's failure to comply with the requirements of §§ 511, 514, or 525.

*Second 1998 Chapter 13 Case*

17. Forty-one days later, the Debtor filed her fifth *pro se* chapter 13 case.

18. The Debtor's petition stated she had between 1 to 15 creditors and liabilities between $500,000 to $999,000. The Debtor failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

19. The Utah State Tax Commission filed an objection to the Debtor's plan because the Debtor had failed to file income tax returns for 1990, 1991, 1992, 1993, 1994, 1995, 1996 and 1997.

20. This Court dismissed the case because the Debtor failed to comply with the requirements of §§ 511, 514, or 525.

*2001 Chapter 13 Case*

21. The Debtor's sixth *pro se* chapter 13 case was filed in 2001. The Debtor failed to list the cases filed in 1996 and 1998 on her petition.

22. The Debtor's petition lists between 1 to 15 creditors and liabilities between $100,000 to $499,000.

23. The Debtor failed to file statements, schedules or a plan, make plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

24. The case was filed the same day a trustee's sale of the Debtor's home was scheduled by Ames Capital Corporation a/k/a Ames Capital Mortgage ("Ames").

25. The Utah State Tax Commission again filed an objection to the Debtor's chapter 13 plan for failure to file her 1998, 1999, and 2000 tax returns.

26. This case was dismissed because the Debtor failed to comply with the requirements of §§ 511, 514, or 525.

*2002 Chapter 13 Case*

27. Less than two months after her sixth case was dismissed, the Debtor filed her seventh *pro se* chapter 13 case. The Debtor failed to list her 1998 cases on the petition.

28. The Debtor's petition listed between 1 to 15 creditors and liabilities between $100,000 to $499,000.

29. The Debtor once again failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

30. The Debtor filed this case the same day Ames had scheduled its second trustee's sale of the Debtor's home.

31. Ames filed an objection to dismissal of the case and a motion to dismiss with prejudice.

32. Subsequently, this case was dismissed with prejudice to refiling any bankruptcy case for a 180 days.

*2003 Chapter 13 Case*

33. Less than fifteen months after her last case was dismissed, the Debtor filed her eighth *pro se* chapter 13 case. The Debtor failed to list her 1998 and 2001 cases on the petition.

34. The Debtor's petition stated she had between 1 to 15 creditors and liabilities between $100,001 to $500,000.

35. The Debtor failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money was ever paid into a plan.

36. This case was dismissed because the Debtor failed to comply with the requirements of §§ 511, 514, or 525.

*2004 Chapter 13 Case*

37. Less than three months after her eighth case was dismissed, the Debtor filed her ninth *pro se* chapter 13 case. The

Debtor failed to list her 1998, 2001, and 2002 cases on her petition.

38. The Debtor's petition lists between 1 to 15 creditors and liabilities between $100,001 to $500,000.

39. The Debtor failed to file statements, schedules or a plan, make any plan payments, or attend her § 341 meeting. No money has been paid into a plan.

40. Kevin Anderson, the Chapter 13 Trustee (Chapter 13 Trustee) filed a Motion to Dismiss With Prejudice and Memorandum in Support Thereof which was scheduled for hearing on May 12, 2004.

41. Subsequently, the UST filed an Motion to Dismiss Case With Prejudice. The Debtor did not appear at the May 12, 2004 hearing, and the Court granted the Chapter 13 Trustee's motion and dismissed the case; however, the Court retained jurisdiction over the case to determine the dischargeability of scheduled debts under § 349(a).

42. On June 24, 2004, the UST filed an amended motion to dismiss the case with prejudice under § 349(a) (Motion). Notice of the hearing and the Motion were personally served on the Debtor pursuant to Rule 4 of the Federal Rules of Civil Procedure.[9]

43. The Debtor has not responded to the Motion.

44. The Debtor failed to attend the hearing on the UST's Motion. After hearing the UST's arguments, the Motion was taken under advisement.

## II. ANALYSIS

There are two issues raised by the UST's Motion to dismiss with prejudice under § 349(a) seeking to bar the future discharge of the Debtor's current debts. First, under what circumstances should a motion be granted under § 349(a), considering the alternatives available, such as dismissal under § 109(g) or denial of discharge under § 727 which are Code sections that provide somewhat similar relief. Second, what actions of a debtor constitute "cause" to dismiss the case with such a drastic sanction.

### A. Jurisdiction

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I), and this Court has the authority to enter a final order. Venue is proper under 28 U.S.C. § 1409.

### B. Dismissal and Discharge Code Provisions

Among the sections of the Code dealing with dismissal and discharge, three sections that provide related relief are implicated in this case. An action that results in a general denial of discharge, complete with all the protections of an adversary proceeding, is found in § 727. The same relief, without the procedural specifications of an adversary proceeding, is found in the first part of § 349(a). However, the second part of § 349(a) does not preclude dismissal of a case with denial of access to the court for a specified period as provided in § 109(g)—a circumstance that results in relief somewhat similar to denial of discharge. This opinion addresses the circumstances in which each of the Code provisions should be used.

### 1. History of § 349(a)

In order to distinguish § 349(a) from similar denial of discharge relief found in

9. Fed.R.Civ.P. 4 is incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 7004.

§ 727 and denial of access to the court relief found in § 109(g), it is helpful to examine the historical development of § 349(a). Unlike the current Code where a presumption exists that a debtor will receive a discharge unless an objection is timely filed, the bankruptcy statutes previously required a debtor to apply for a discharge within a fixed period of time.[10] If the debtor did not timely file such an application, the case was dismissed with the implication that the debtor was not eligible for discharge. Because the issue of discharge had been before the court, dismissal without a discharge implicated *res judicata.* Prior to 1938, a dismissal of a bankruptcy case barred future discharge of current debts.[11] In *In re Smith,* an opinion recently issued in this jurisdiction, the court stated that § 349(a) was enacted to reverse this "doctrine of res judicata barring discharge of debts from every dismissed action" and to limit a court's discretion to bar future discharge of current debts under § 349(a) to instances where the debtor has exhibited egregious conduct.[12] *Smith,* however, does not explain how a § 349(a) dismissal differs from a denial of discharge under § 727, or a dismissal that precludes future access to the court under § 109(g).

### 2. Section 727

A denial of discharge under § 727 differs from a dismissal with prejudice under § 349(a) in its genesis, procedure, and application. Unlike the provisions in the current § 349(a), enacted to reverse the presumption that all dismissals barred the future discharge of current debts, denial of discharge found in § 727(a) reflects the historic roots that certain acts by debtors were so harmful to the bankruptcy system that a debtor should be denied a discharge.

The result of denial of discharge in these two sections of the Code also result from different procedures: § 349(a) from a contested matter proceeding, and § 727(a) from an adversary proceeding. While Fed. R. Bankr.P. 7001(4) (collectively the "Rules" individually a "Rule") provides that a proceeding to object to a discharge is an adversary proceeding, a motion to dismiss a case under § 349(a) usually proceeds under Rule 9014 as a contested matter.[13] Since Rule 9014(b) provides that a motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and since Rule 9014(c) allows the incorporation of any of the other rules in Part VII as is appropriate, a debtor can be afforded the procedural protections under a denial of discharge obtained through § 349(a) that would be available in § 727(a).

Although §§ 349(a) and 727(a) have dissimilar roots and apply in different circumstances, the ultimate result—denial of discharge of certain debts—is similar. Consequently, a debtor must be afforded the same due process rights given to a debtor in a § 727 action.[14] The UST has complied with this requirement. Rather than just mailing the Motion and notice of hearing by first class mail, as required by Rule 7004(b), the Debtor was served with

---

**10.** *In re Smith,* No. 03–36469 at 4–5 (Bankr. D.Utah Nov. 22, 2004) (citing § 14 of the Bankruptcy Act of 1898).

**11.** *Id.*

**12.** *Id.* at 6.

**13.** Fed. R. Bankr.P. 9014.

**14.** *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 941 (9th Cir. BAP 1997) (citing 3 COLLIER ON BANKRUPTCY § 349.02[2] at 349 (15th ed.1997)) (finding that court did have authority to bar indefinitely any future filings by the debtor related to his then-existing debt), *aff'd* 171 F.3d 1219 (9th Cir.1999).

a copy of the UST's Motion and notice of hearing by a process server—the Debtor has been afforded due process.

█ Sections 727 and 349(a) also apply in different circumstances. First, § 349(a) and § 109(g) govern subsequent filings.[15] A debtor must have filed a prior case before a Court can employ § 349(a). Conversely, there is no need for a debtor to have filed multiple cases to be denied a discharge under § 727. Second, § 727 requires a court to issue a discharge unless one of the eight conditions listed in that provision are met.[16] With some limited exceptions, § 727 focuses on a debtor's conduct in the pending case or on conduct within one year of filing the petition.[17] In contrast, § 349(a) focuses not only on a debtor's conduct in a pending case but also on the debtor's entire filing history. Third, § 349(a) governs the effect of a dismissal. On the other hand, § 727 determines whether debtors are entitled to receive a discharge but does not impact the ongoing administration of the case and distribution of estate assets to creditors. Finally, § 727 applies only to a Chapter 7 petition for relief and does not apply in this Chapter 13.

### 3. Section 109(g)

There are two important differences between § 349(a) and § 109(g). The first difference, is the remedy provided by each section of the Code. Section 109(g) determines whether a debtor may access the bankruptcy court in the future; whereas § 349(a) determines whether a debtor will be entitled to discharge certain debts in future cases.

█ The two Code sections are also distinguishable because they are to be utilized under different circumstances. Congress enacted § 109(g) in 1984 to stop "the filing of meritless petitions in rapid succession to improperly obtain the benefit of the Bankruptcy Code's automatic stay provisions as a means of avoiding foreclosure."[18] For example, courts employ § 109(g): (1) when a debtor's case is dismissed for willful failure to abide by orders of the court, or to appear before the court in proper prosecution of the case; or (2) when a debtor requests and obtains a voluntary dismissal following the filing of a request for relief from the automatic stay.[19] Alternatively, a Court should employ § 349(a) when a debtor's conduct is more egregious. Congress contemporaneously enacted § 109(g) and amended § 349(a) to include the following language, "nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, **except as provided in section 109(g)**."[20] One court concluded:

> [Section] 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have res judicata effect. Rather, the language of § 349 as amended, 'seems to make clear that the court has the power to order' such a sanction '**in circumstances other than those dealt with by**

---

15. *In re Sink*, No. 02–40042 at 8 (Bankr. D.Utah Feb. 28, 2003) (interpreting and explaining the structure and impact of § 109(g)).

16. § 727(a).

17. *See* § 727.

18. *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir.1997) (distinguishing § 109(g) and § 349(a) dismissals with prejudice).

19. § 109(g).

20. § 349(a) (emphasis added).

new § 109(g).'[21]

By amending § 349(a) to specifically exclude conduct that warrants dismissal under § 109(g), Congress articulated that courts should apply § 349(a) in circumstances that are not covered by § 109(g) *i.e.,* § 349(a) should be applied in more egregious cases.

## C. Legal Standard and Application

■ Having distinguished the applications of §§ 109(g) and 727, as opposed to the application of § 349(a), the second issue to be determined is whether the Debtor's case should be dismissed with prejudice under § 349(a) barring future discharge of the Debtor's current debts. Under § 349(a), a bankruptcy court has the discretion to dismiss a case with prejudice "for cause."[22] However, a § 349 dismissal with prejudice "is a severe sanction to which the courts should resort only infrequently."[23]

■ Section 349(a) provides, "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed."[24] The phrase "for cause" or "cause" is used throughout the Code, yet it is not defined. When interpreting the language of a statute, the starting point is the language of the statute itself.[25] If the language is clear and

unambiguous, the plain meaning of the statute controls.[26] In *Frieouf,* the Tenth Circuit concludes that the plain meaning of § 349(a) was driven by its punctuation and, therefore, § 349(a) "only denies a debtor future discharge of debts dischargeable in that particular case,"[27] but the court stopped short of interpreting the phrase "for cause" in § 349(a). Instead, the court adopted the reasoning articulated in *In re Hall* that "egregious conduct" is established by evidence of bad faith that is prejudicial to creditors.[28] The adopted definition does little to guide courts in determining what specific type of conduct fulfills the "for cause" requirement. Therefore, this Court still has discretion to determine what type of conduct constitutes cause under § 349(a) in light of the factors set forth in *Hall,* namely, whether (1) the debtor demonstrated bad faith or defiance, and (2) whether the debtor's conduct was abusive or prejudicial to creditors.

### 1. First *Hall* Factor: Bad Faith or Defiance

■ A bad faith determination under § 349(a) is akin to the same determination under § 1307(c). Like § 349(a), § 1307(c) allows a court to dismiss a case "for cause." Section 1307(c) provides a non-exclusive list[29] of ten enumerated reasons to dismiss for cause under Chapter 13.

---

21. *Tomlin,* 105 F.3d at 938(citing Michael T. Andrew, *Real Property Transactions and the 1984 Bankruptcy Code Amendments,* 20 REAL PROP. PROB. & TR. J. 47, 72 n. 107 (1985)) (emphasis added).

22. § 349(a).

23. *Hall v. Vance,* 887 F.2d 1041, 1045 (10th Cir.1989) (debtor's conduct was insufficient to justify a dismissal with prejudice) (internal citations omitted).

24. § 349(a).

25. *In re Geneva Steel Co.,* 281 F.3d 1173, 1178 (10th Cir.2002) (interpreting the language of a § 510(b)).

26. *Id.*

27. *Frieouf,* 938 F.2d at 1103.

28. *Id.* at 1104 (stating that bad faith and prejudice to creditors must be proven to establish cause under § 349(a)).

29. The term "including" in § 1307 is not limiting. *See* § 102(3).

Although not specifically listed within § 1307(c), evidence of bad faith is sufficient cause for dismissal.[30] Bad faith is determined by examining the totality of the circumstances.[31] In *Smith*, the court adopted the totality of the circumstances approach used by courts to analyze a § 1307(c) dismissal "for cause" and used the *Flygare* factors to establish the debtor's bad faith conduct under § 349(a).[32] The *Flygare* opinion analyzed whether a debtor had filed a Chapter 13 *plan* in good faith under § 1325.[33] There is no companion statute requiring debtors to file *petitions* in good faith—that is when § 349(a) comes into play because it looks beyond a debtor's plan. The comprehensive, retrospective inquiry of § 349(a) includes, among other things, whether plans were filed in good faith, whether petitions were filed for an improper purpose, and whether a debtor fulfilled her statutory requirements. Section 349(a) looks beyond the totality of the circumstances in the current case and reaches back to the circumstances of each prior filing. This Court adopts the *Flygare* factors for this § 349(a) bad faith analysis because those factors offer guidance to the Court in defining what conduct generally constitutes bad faith.[34]

The inquiry, however, does not end with the *Flygare* bad faith analysis because a § 349(a) dismissal must be premised on a debtor's exhibition of additional undesirable or egregious conduct that goes beyond the type of conduct that would justify a "for cause" or bad faith dismissal under §§ 1307 or 1325.[35] Some courts have referred to this conduct as "contumacious"[36] or a "pattern of eva-

30. *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier)*, 986 F.2d 1326, 1328 (10th Cir.1993) (holding that a court must examine a bad faith dismissal in light of the totality of the circumstances) (internal citations omitted). *See also Leavitt*, 171 F.3d at 1224 (citing *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994)); and *In re Hopkins*, 201 B.R. 993, 995 (D.Nev.1996) (sufficient cause existed to justify bad faith dismissal under § 1307(c)).

31. *Gier*, 986 F.2d at 1328. *See also Frieouf*, 938 F.2d at 1104; *In re Leavitt*, 209 B.R. 935, 940 (9th Cir. BAP 1997); *In re Martin–Trigona*, 35 B.R. 596, 601 (Bankr.S.D.N.Y.1983) (stating that "the cumulative effect will be considered in determining whether there exists sufficient cause for a dismissal with prejudice pursuant to § 349(a)") (internal citations omitted). *Smith* relied on the *Flygare* factors to determine whether a plan was filed in bad faith under § 1325(c). *Smith*, No. 03–36469 at 7. A bad faith analysis under either § 1307(c) or § 1325 includes an examination of the totality of circumstances which includes the debtor's conduct in prior cases. *See Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983).

32. *Smith*, No. 03–36469 at 7 (citing *Flygare*, 709 F.2d at 1347–48) (other citations omitted).

33. *Flygare*, 709 F.2d at 1347–48.

34. A finding of bad faith does not require fraudulent intent by a debtor. *Leavitt*, 171 F.3d at 1224. "[N]either malice nor actual fraud is required to find a lack of good faith." *In re Powers*, 135 B.R. 980, 994 (Bankr. C.D.Cal.1991). The Tenth Circuit BAP recently issued an unreported opinion stating that under § 362 "[b]ad faith and, thus, 'cause' may exist when a debtor has acted improperly in some way toward the movant-creditor during the pre-petition period and when a petition is filed to thwart foreclosure efforts." *Vessa v. Community First Nat'l Bank of Gillette (In re Vessa)*, No. 03–21712, 2004 WL 2640350 at *4 (10th Cir. BAP Nov. 11, 2004).

35. This conclusion is evident because of the harsh result of a § 349(a) dismissal with prejudice.

36. *Martin–Trigona*, 35 B.R. at 601 (citing *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366, 368 (5th Cir.1967)) (internal quotations omitted).

sion."[37] This Court also chooses to label this conduct as defiant. The word "defiant" is defined as "bold resistence to an opposing force or authority."[38] Although successive filings do not necessarily constitute defiant conduct, multiple filings may be evidence of such conduct, as is a debtor's continued failure to actively prosecute her bankruptcy cases.[39]

■ The Debtor's lack of good faith throughout her filing history is evident. This Debtor has never filed statements, schedules or a plan; she has never attended a meeting of creditors; and she has never made a plan payment. No money has ever been distributed to her creditors. The Debtor has never appeared before this Court to prosecute her case. It is apparent that most filings were to frustrate a foreclosing creditor and were filed solely for the purpose of delay and not to reorganize. This evasive and defiant conduct is distinguishable from other repeat filers who attempt to prosecute their plans by attending their meeting of creditors, filing the required documents, and making plan payments. Many cases before this Court are dismissed under § 1307 for failing to fulfill these requirements; some may even be dismissed with prejudice for failing to appear in proper prosecution or to abide by court order under § 109(g). However, this Debtor's conduct is more egregious and defiant than those because she has *never* made an effort to prosecute a plan in

good faith, nor has there been any demonstrable change in her circumstances which might justify successive refiling.

Furthermore, this is her ninth bankruptcy case in the past nine years. This Debtor is among a minority of repeat filers who have filed more than nine petitions. This Debtor's failure to disclose prior filings in subsequent petitions is further evidence of bad faith.

After examining the totality of circumstances in all nine of the Debtor's cases, it is evident that this Debtor never intended to prosecute her cases. The Debtor's pattern of evasive and defiant conduct goes beyond the conduct which would justify a § 109(g) or a § 1307 dismissal. The Debtor's lack of *any* participation in the prosecution of her nine cases demonstrates not only bad faith, but a willful disregard for this Court and the bankruptcy system as a whole.

## 2. Second *Hall* Factor: Prejudice to Creditors or Abusiveness

■ A creditor is prejudiced when a debtor, through repeated filings, denies the creditor the opportunity to exercise its contractual rights because of the automatic stay.[40] Abusive serial filing not only denies the creditor certain rights, it allows a "rapacious" debtor to use the automatic stay as a sword against its creditor: this is

---

**37.** *Frieouf*, 938 F.2d at 1105.

**38.** WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 356 (1984).

**39.** *See e.g., In re Jones*, 289 B.R. 436, 439–40 (Bankr.M.D.Ala.2003) (denying discharge of future debts and future filing for five years); and *In re Merrill*, 192 B.R. 245, 248–49 (Bankr.D.Colo.1995) (stating that bad faith exists when a debtor files a petition without intending to perform his or her statutory obligations under the Code, or when a debtor's

conduct before or during a case constitutes an abuse of the provisions, purpose, or spirit of the Code). The *Jones* court adopts the position that § 349(a) can be used to bar a debtor from filing subsequent cases beyond the 180–day limitation·found in § 109(g). The Tenth Circuit has declined to follow this position. However, the *Jones* court's § 349(a) analysis regarding bad faith and prejudice to creditors is still helpful to this court's analysis.

**40.** *Frieouf*, 938 F.2d at 1104.

not the purpose of § 362.[41]

Since 1996, this Debtor has enjoyed approximately twenty months of automatic stay protection. Each 1996 petition was filed within hours of scheduled trustees' sales. The 1998 petitions were each filed shortly after the prior case was dismissed, and the 2001 petition was filed the same day a trustee's sale was scheduled to foreclose the Debtor's home. Less than two months after the 2001 case was dismissed, the Debtor filed another Chapter 13 petition again on the day of the trustee's sale. This case was dismissed with prejudice, and the Debtor was barred from refiling for 180 days. Fifteen months later, the Debtor filed another Chapter 13 petition. Perhaps § 109(g) is the appropriate remedy for debtors who file to forestall a foreclosure, but in these cases it appears that the foreclosing mortgage creditors, who are the only creditors listed on the Debtor's creditor list, have been unable, for one reason or another, to foreclose, or they represent debts on different pieces of property. In addition, the Debtor refuses to file statements and schedules so her financial history and an accurate list of creditors and assets is not available. The failure to file a plan and the timing of each filing demonstrates that this Debtor has not attempted to adjust and repay her debts as Chapter 13 contemplates. Rather, it demonstrates that she has abused the purposes of the automatic stay, and as the court stated in *Jones* her "sole purpose has been to frustrate and delay her creditors." [42] This Debtor has systematically manipulated the bankruptcy system and used it as her own personal shield from creditors' collection efforts—such abusive conduct cannot be condoned and will not be tolerated.

### D. Sanction

Having determined that this Debtor's conduct is sufficiently evasive, defiant and abusive to dismiss the case with prejudice under § 349(a), this Court must now determine an appropriate sanction. According to most circuits, there are two possible sanctions courts can apply if they find that cause exists to dismiss a case with prejudice under § 349(a): (1) a lock out for more than the 180 days provided for in § 109(g); and/or (2) a denial of discharge in any future case of debts that were dischargeable in the dismissed case.[43] The Tenth Circuit is an exception.

Under *Frieouf* courts have the option of sanctioning the debtor by barring future discharge of a debtor's current debts.[44] Some courts have read *Frieouf* as limiting a bankruptcy court's ability to dismiss with prejudice only within the parameters of § 109(g).[45] However, *Frieouf* held:

> [b]y its terms, section 349(a) gives bankruptcy courts discretion to determine

---

41. *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir.1986) (finding that debtors' plan was proposed in bad faith and for the sole purpose of rejecting an option contract which was not profitable. Also stating that the protections of the bankruptcy system should not be used "as a sword by the rapacious").

42. *Jones*, 289 B.R. at 439.

43. *Tomlin*, 105 F.3d at 938. Some courts have merely barred the debtor from receiving a discharge of scheduled debts for a period of time. *Frieouf*, 938 F.2d at 1105 (affirming court's lower decision to deny discharge of

current debts in future cases for a period of three years).

44. *Frieouf*, 938 F.2d at 1103 (explaining that § 349(a) cannot be used to deny a debtor future access to the Courts beyond the 180 days provided for in § 109(g)).

45. *Robertson*, 206 B.R. at 830 n. 4 (stating "[s]ome courts have asserted that a court's ability to dismiss with prejudice is only possible within the limits set out in § 109(g)"); *Javens*, No. 99–74189, 2000 WL 1279189 at *2 (broadly stating that "[u]nder the Tenth Circuit's interpretation, a Bankruptcy Court

whether there is 'cause' to dismiss a case with prejudice. Under its precise language, however, section 349(a) only denies a debtor future discharge of debts dischargeable in that particular case. Section 349(a) does not deny a debtor all future access to bankruptcy court, *except as provided in section 109(g)*.[46]

Under this holding, *Frieouf* precludes courts in the Tenth Circuit from locking debtors out of the bankruptcy system for more than the 180–day period provided for in § 109(g). However, it does not place any restriction on a court's ability to bar the discharge of current debts in future bankruptcy cases. Courts interpreting *Frieouf* as limiting a bankruptcy court's power to dismiss a case with prejudice to circumstances covered by § 109(g) have done so incorrectly.[47] Accordingly, this Court finds that the egregious, defiant, and abusive behavior exhibited by this Debtor justifies a dismissal under § 349(a). All of the Debtor's debts incurred prior to the current filing date of February 23, 2004 are nondischargeable in any subsequent case this Debtor may file.[48]

### III. CONCLUSION

 A § 349(a) dismissal is a severe sanction.[49] It should be employed only when a debtor has demonstrated defiant and abusive conduct which not only prejudices creditors but also offends the purpose and spirit of the bankruptcy system. The bankruptcy system was put into place to allow debtors a period of relief to attempt to restructure and discharge their debt and to obtain a fresh start. However, with the promise of a fresh start come obligations such as attending a meeting of creditors, filing statements and schedules, and making plan payments. A debtor who does not fulfill these obligations is not entitled to the protections afforded by the bankruptcy system.

This Debtor has "availed [herself] of the equitable benefits provided by the Bankruptcy Code through multiple filings while ignoring [her] statutory duties."[50] If this conduct goes unchecked, this Debtor will continue her pattern of abuse. She has become a sophisticated operative—using the bankruptcy system and its protections to her benefit and to the detriment of her creditors and the bankruptcy system.

In conclusion, the Court finds that the Debtor has been properly served with the Motion and notice of hearing and that the Debtor has failed to respond. For the reasons set forth above, the Court grants

lacks authority to dismiss a case with prejudice, except for when section 109(g) applies"); *Benefield,* No. 3–91–1421–H, 1991 WL 542279 at *2 (refusing to follow *Frieouf*).

**46.** *Frieouf,* 938 F.2d at 1103 (emphasis in original).

**47.** This conclusion is consistent with this Court analysis in *Sink,* No. 02–40042, at 9 stating that "it is only through § 109(g) that a debtor can be precluded from refiling, and then only under the conditions and time frames set forth in § 109(g)."

**48.** The Court is unable to specifically identify the Debtors pre-February 23, 2004 debts because the Debtor has not filed statements and schedules or a plan. However, the Debtor did disclose on her Chapter 13 petition that she has between 1 and 15 creditors and between $500,000 and $1,000,000 in debts. Furthermore, the Debtor did file a matrix listing the following creditors: Countrywide Home Loans, P.O. Box 5170, Simi Valley, CA 93062–5170; and Pettey & Associates, 9488 South Union Square, Sandy, UT 84070.

**49.** *Hall,* 887 F.2d at 1045 (internal citations omitted).

**50.** *McCoy,* 237 B.R. at 423.

the UST's Application for Entry of Default and the UST's Motion. A separate order will be issued.