FILED

JUL 27 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>GABINO F.A. DURAN,<br><br>        Debtor. | BAP No. CC- 20-1045-KTG<br><br>Bk. No. 9:18-bk-11719-MB |
| GABINO F.A. DURAN,<br>        Appellant,<br>v.<br>LUZ GUDINO; ELIZABETH F. ROJAS,<br>Chapter 13 Trustee,<br>        Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Martin R. Barash, Bankruptcy Judge, Presiding

APPEARANCES:
Jerry Namba argued for appellant Gabino F.A. Duran; Paul F. Ready of
Farmer & Ready argued for appellee Luz Gudino.

Before: KLEIN,* TAYLOR, and GAN, Bankruptcy Judges

---

*     Hon. Christopher M. Klein, United States Bankruptcy Judge for the Eastern
District of California, sitting by designation.

KLEIN, Bankruptcy Judge:

All roads to dismissal pass through Bankruptcy Code § 349(a).[1] The debtor moved to dismiss as of "right" under § 1307(b) and wound up with an order under § 349(a) that dismissal of his case be "with prejudice."

The debtor's motion to dismiss under § 1307(b) drew an allegation of "cause" under § 349(a) to order that dismissal be with prejudice. The court found the requisite § 349(a) "cause" and ordered that dismissal be with prejudice, but the record is ambiguous whether dismissal was premised on § 1307(b), § 1307(c), § 1307(e), § 105, or inherent authority. From the standpoint of the debtor, the moral of the story is that the § 1307(b) "right" to dismiss is not a get-out-of-chapter-13-free card.

We hold: (1) every dismissal, including a § 1307(b) motion to dismiss, triggers the § 349(a) issue whether "cause" exists to order that dismissal be with prejudice; (2) no particular procedure prescribes how or when to initiate a contest regarding § 349(a) "cause" so long as there is due process notice appropriate for denial of discharge and a hearing; and (3) the proponent of a § 349(a) prejudice determination has the burden of persuasion. We AFFIRM and publish because of the novelty of the issue.

---

[1] Unless specified otherwise, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" refers to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" refers to the Federal Rules of Civil Procedure.

## FACTS

Gabino F.A. Duran, who formerly did business as Duran Farming and Duran Strawberry Services, filed his chapter 13 petition on October 18, 2018. He was no stranger to bankruptcy, having filed chapter 12 cases in 2010 and 2012, the latter of which ended with a chapter 7 discharge.

In his initial verified schedules, Duran portrayed himself as a farmhand employee of Rancho Bonita Farms, earning monthly gross wages of $4,283.17, who owned a fractional interest in his residence subject to a $175,249.38 mortgage and owed priority unsecured state tax debt of $4,497.33 and unsecured debt of $101,901.04.

Gradually a different picture emerged. Duran thrice amended his schedules over seven months under pressure from Nemesis, played by creditor Luz Gudino, who had a pending unscheduled $141,944.04 lawsuit against Duran for contract farm labor.

The first two amendments added Gudino's pending lawsuit, a judgment debt of $134,676, as well as two assets and an increase of his proportionate interest in his residence.

The abrupt change occurred the day before the confirmation hearing when Duran filed his third verified amendment. In that peripeteia, Duran confessed that his gross income was not $0.00 in 2016 and 2017, as stated in his verified Statement of Financial Affairs, but rather respectively $1,345,074 and $1,424,611. He also revealed that 11 months before filing the

3

chapter 13 case he transferred all his farm equipment (worth more than $50,000), and his owned and leased farmland, including 20-acres planted by Gudino's farm laborers, to insider Clara Galvan Hernandez ("Galvan"),[2] who is the mother of his five children.

Galvan, operating under the name Rancho Bonita Farms, nominally became Duran's "employer" in November 2017.

Galvan's bank statements for the period February 5 to October 31, 2018, reveal revenues of $1,101,915.60.

Even before these revelations, there were objections to Duran's plan to pay a 00.5% dividend to unsecured creditors. Gudino objected, mined records of prior Duran cases to ferret out assets, and spared no effort to hold Duran to account.

Gudino's "Rebuttal" to Duran's reply to the objection to confirmation ended with the statement "this case should be either dismissed or converted to a Chapter 7 proceeding to allow a disinterested trustee to claw back the assets and funds that should be available for payment to the creditors of this estate." Bankr. Docket No. 38, at pp. 3-4. But Gudino did not make a motion to dismiss or convert under the procedure prescribed by Rule 1017(f)(1).

The chapter 13 trustee additionally objected that tax returns were missing and that the plan was not feasible.

---

2     The court ruled Galvan is a nonstatutory insider. 11 U.S.C. §§ 101(31)(A)(i), 102(3) & (5). Duran does not question that ruling.

At the two-day evidentiary hearing on plan confirmation, Duran and Galvan, among others, testified. The focus included issues of good faith, accounting for farming equipment, and the election to forego harvesting 20 acres of strawberries planted by Gudino's farm laborers but thereafter to farm the same land under the Rancho Bonita flag. During the hearing, Gudino did not assert that the case should be converted or dismissed.

The court ordered post-hearing briefs regarding confirmation, to include the essential element that the plan had been proposed in good faith, before submitting the matter for decision.

Gudino's post-hearing brief included an assertion that cause existed to dismiss the chapter 13 case with prejudice for bad faith. But Gudino did not at any time file and serve a motion to convert or dismiss under § 1307(c), under the procedure prescribed by Rules 1017(f)(1) and 9014.

Before the plan confirmation question was ripe for decision, the United States filed a surprise $638,198.19 proof of federal tax claim. Duran's sworn schedules suggested no federal tax debt existed.

The United States also filed a confirmation objection stating that Duran exceeded the § 109(e) chapter 13 debt limits, that the plan was not feasible, and that the case should be dismissed under § 1307(e). Although the objection stated the United States "will move" to convert or dismiss, it did not file a motion to convert or dismiss under § 1307(c) or § 1307(e), under the procedure prescribed by Rules 1017(f)(1) and 9014.

Duran responded to the court's order to address the federal tax claim, conceding the claim is valid and rendered him ineligible for chapter 13. Duran thereupon filed a motion to dismiss under § 1307(b), following the procedure prescribed by Rules 1017(f)(2) and 9013.

Gudino filed an "opposition" to Duran's § 1307(b) motion urging only that dismissal should be with prejudice under § 349(a) for egregious bad faith. But, Gudino did not make a motion to dismiss or convert under § 1307(c).

As evidence of egregious bad faith, Gudino relied on the evidence of chicanery provided at the confirmation hearing, the failures to disclose and misrepresentations in the sworn schedules, the false portrayal of Duran as a mere farmworker employee, and the apparently intentional failure to disclose the substantial federal tax debt.

Duran's defense amounted to equivocations about various problems in the case.

While Duran contended that dismissal with prejudice amounts to denial of discharge as to which he would not have the burden of proof, he did not contend that an adversary proceeding or further evidentiary hearing was necessary.

The bankruptcy court held a hearing at which it considered the entire record and at which Duran did not seek to present additional evidence. As Duran's motion to confirm plan had been eclipsed and implicitly mooted

6

by his § 1307(b) motion, the only formal motion before the court was Duran's § 1307(b) motion, coupled with Gudino's "opposition" that dismissal should be "with prejudice" under § 349(a).

The court's ruling had two phases. First, it explained why the by-then moot plan could not be confirmed, referring to (among other reasons) Duran's failure to meet his burdens to establish that the case and the plan were filed in good faith, as required by § 1325(a)(3) and (7). Second, the court focused on the § 349(a) question raised by Gudino, making findings of fact and conclusions of law orally on the record.

The court identified the governing § 349(a) standard as "totality of circumstances" under the law of the circuit established in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999), *aff'g* 209 B.R. 935 (9th Cir. BAP 1997). It considered the four objective *Leavitt* factors: (1) whether Duran misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner; (2) Duran's history of bankruptcy filings and dismissals; (3) whether Duran only intended to defeat state court litigation; and (4) whether egregious behavior is present.

It then considered Duran's bankruptcy history, his litigation with Gudino, the falsities in his schedules, and the degree of Duran's missteps. The court determined that: (1) Duran's prepetition transfer of farmland, crops, and equipment to Galvan was part of a scheme to evade his debt to

Gudino; (2) not harvesting the 20-acre strawberry crop planted with Gudino's contract farm labor was inexcusable waste; and (3) the chapter 13 petition, the misrepresentations, omissions, and misstatements under penalty of perjury cumulatively constituted egregious and inequitable bad faith conduct, as well as what the court described as "huge" unfair manipulation and abuse of the Bankruptcy Code.

As to credibility, the court explicitly disbelieved Duran's and Galvan's testimony. Their excuses for the prepetition transfers were rejected as not credible and not supported by evidence. Likewise, their spin on postpetition misrepresentations was deemed incredible.

The court concluded that the totality of circumstances strongly militated in favor of ordering that the effect of dismissal be with prejudice. Nothing suggests that the court was dismissing the case on any basis other than Duran's § 1307(b) motion to dismiss "of right." The court did not evaluate whether conversion or dismissal was in the best interests of creditors and the estate as required by § 1307(c) and § 1307(e). Nor did the court indicate that it was denying Duran's motion to dismiss in favor of dismissing on some other theory, such as § 105(a) abuse of process.

Although the only procedurally correct motion to dismiss in the record was Duran's § 1307(b) motion to dismiss as of "right," the form of dismissal order prepared by Gudino's counsel and signed by the court referred to a nonexistent dismissal motion by Gudino, for which required

8

findings were not made, and then purported to deny Duran's § 1307(b) motion and dismiss with prejudice under § 349(a).

Duran timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. What standards apply to determination of the issue that dismissal be with prejudice pursuant to 11 U.S.C. § 349(a)?

2. What procedure is entailed in presenting the issue that dismissal be with prejudice pursuant to 11 U.S.C. § 349(a)?

3. Who has the burden of persuasion for imposing a condition that dismissal be with prejudice under 11 U.S.C. § 349(a)?

4. Did the bankruptcy court abuse its discretion when it ordered that Duran's bankruptcy case be dismissed with prejudice?

## STANDARDS OF REVIEW

The determination of bad faith or egregious conduct for purposes of dismissal with prejudice is reviewed for clear error as a mixed question of law and fact as to which facts predominate. *See U.S. Bank Nat'l Ass'n ex rel CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge*, ___ U.S. ___, 138 S. Ct. 960, 967-68 (2018); *Leavitt*, 171 F.3d at 1222-23; *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994).

The decision to vary the § 349(a) effect of dismissal by imposing a condition such as "with prejudice" is reviewed for abuse of discretion. *Leavitt*, 171 F.3d at 1223, 1226; *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 922-23 (9th Cir. BAP 2011).

A bankruptcy court abuses its discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

The novelty in this appeal is that the § 349(a) issue was prompted by the debtor's no-fault motion to dismiss as of "right" under § 1307(b). *Leavitt* and our existing § 349(a) chapter 13 precedents involve only § 1307(c). Sorting out the relationship among § 1307(b), § 1307(c), § 1307(e), and other authority for dismissal is not essential to the analysis. The salient point is that § 349(a) is an independent question that applies to all forms of dismissal, including § 1307(b).

## I.
## Applicable Statutes

The basic legal principles are settled, but questions of procedure and burdens of proof remain.

## A.    11 U.S.C. § 1307

This chapter 13 case could have been dismissed under a variety of alternative theories.

The debtor's § 1307(b) motion to dismiss, which was the only formal motion to dismiss actually before the court, is a dismissal nominally as of "right" on the motion of the debtor under the procedure prescribed by Rules 1017(f)(2) and 9013. 11 U.S.C. § 1307(b).

Although § 1307(b) says that "Any waiver of the right to dismiss under this subsection is unenforceable," this "right" has been qualified in this circuit by an implied power of the court to override the debtor's wishes and convert a case to chapter 7. *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 773-75 (9th Cir. 2008); 11 U.S.C. § 1307(b); *Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 618 B.R. 1, 10-12 (9th Cir. BAP 2020), *appeal argued & submitted*, No. 20-60043 (9th Cir. July 9, 2021); *cf. Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 371 (2007) (§ 706(a)).

A § 1307(c) motion to dismiss or to convert to a case under chapter 7, "whichever is in the best interests of creditors and the estate," may be made by any party in interest or the United States trustee for "cause." 11 U.S.C. § 1307(c). The requisite procedure is prescribed by Rules 1017(f)(1) and 9014.

A § 1307(e) motion to dismiss or to convert to a case under chapter 7, "whichever is in the best interests of creditors and the estate," may be

made by any party in interest or the United States trustee for failure of the debtor to file a tax return under § 1308. 11 U.S.C. § 1307(e). The requisite procedure is prescribed by Rules 1017(f)(1) and 9014.[3]

## B.    11 U.S.C. § 349(a)

This appeal involves the court's § 349(a) "for cause" power to impose conditions on every dismissal of a case, including § 1307(b) dismissals. To be clear, every § 1307(c) dismissal for "cause" necessarily implies a choice by the court to dismiss, rather than convert to chapter 7, as being "in the best interests of creditors and the estate." 11 U.S.C. § 1307(c); *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006).

In contrast, § 1307(b) does not require "cause." The question of the best interests of creditors and the estate would have arisen only if the court, per *Rosson*, was being asked by some party in interest to convert to chapter 7 under § 1307(c) or (e). That was not the case in this appeal.

## II.
## Standards Applicable to Dismissal "With Prejudice"

Identifying the standards to apply when determining whether to impose a condition of prejudice on a dismissal begins with being precise

---

3       The court probably also has the power to dismiss a chapter 13 case under § 105(a) to "prevent an abuse of process." 11 U.S.C. § 105(a); *Marrama*, 549 U.S. at 375. And, as the Supreme Court noted in *Marrama*, it may even have inherent authority to dismiss as an exercise of "the inherent power of every federal court to sanction 'abusive litigation practices.'" *Marrama*, 549 U.S. at 375-76. While no particular procedure is prescribed, basic due process principles dictate that there be notice and an opportunity for a hearing.

about § 349(a) nomenclature and the distinction between dismissal and the § 349(a) condition of prejudice.

## A. Disaggregating Concepts of Dismissal and of § 349(a) "Cause" for Prejudice

At the outset, it is important to bear in mind that the commonly-used phrase "dismissal with prejudice" conflates distinct concepts.

First, there is dismissal itself, as governed by the various express dismissal provisions, including §§ 707, 1112, 1208, and 1307, as well as the court's implicit dismissal powers noted above.

Second, there is imposition of a consequence of prejudice for "cause" pursuant to § 349(a).

Similarly, multiple forms of "cause" are at play. "Cause" to impose a condition of prejudice on a dismissal is a more rigorous concept than "cause" to dismiss a case. Proof of "cause" to dismiss may be necessary to dismiss, but it is not sufficient to prove "cause" to impose a condition of § 349(a) prejudice.

We previously explored § 1307(c) "cause" to convert or dismiss relative to § 349(a) "cause" to order that dismissal be with prejudice and emphasized the need for due process notice. *Ellsworth*, 455 B.R. at 917-23. *Ellsworth*, however, left for another day the issue of burden of proof for purposes of § 349(a) dismissal with prejudice. *Id.* at 919. That day has arrived.

13

**B. Nomenclature and Ambiguities**

Words matter. The naked phrase "with prejudice" in connection with § 349(a) has been used in so many different ways that it is ambiguous unless a court is precise about what it means when it invokes the phrase. *Ellsworth*, 435 B.R. at 921; *accord, Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 938-39 (4th Cir. 1997).

**1. "With Prejudice"**

The § 349(a) power of the court "for cause" to "order otherwise" necessarily confers judicial discretion to impose a wide variety of consequences of dismissal regarding discharge of debts in the dismissed case and for filing future petitions.

Appellate courts have had to discern from facts what was intended when a bankruptcy court dismisses a case "with prejudice" without explanation. *E.g., Tomlin*, 105 F.3d at 940-41; *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 333-34 (2d Cir. 1999); *Leavitt*, 209 B.R. at 941 n.10; *see also* 3 Collier on Bankruptcy ¶ 349.02[3] (Richard Levin & Henry J. Sommer eds., 16th ed. 2021).

Courts have used § 349(a) "with prejudice" orders in different senses along a continuum that ranges from what we may describe as "Weak Form" to "Strong Form."

The "Weak Form" includes providing that in a subsequent case the automatic stay will not apply to a particular creditor unless the debtor

persuades the subsequent court to reimpose the stay. *E.g.*, *In re Greenberg*, 200 B.R. 763, 766-70 (Bankr. S.D.N.Y. 1996) (collecting cases); *cf.* 11 U.S.C. § 362(c)(3)-(4) (after 2005). And, it includes temporary prohibition of filing another case for a designated period. *E.g., Tomlin*, 105 F.3d at 938-40 (collecting cases). Standards of "cause" for imposing a "Weak Form" § 349(a) order are not at issue in this appeal.

The "Strong Form" of § 349(a) "with prejudice" is permanent prohibition of bankruptcy discharge for any debt that could have been discharged in the dismissed case. It is tantamount to denial of discharge under § 727. As such, it is a severe measure reserved for egregious circumstances and necessitates that courts proceed with caution and pay attention to due process requirements consistent with denial of discharge. *Leavitt*, 209 B.R. at 939-41 & n.6; *Tomlin*, 105 F.3d at 936-37; 3 Collier on Bankruptcy ¶ 349.02[2].

This appeal involves the "Strong Form" of § 349(a) "with prejudice."

### 2.    "Bad Faith"

A second ambiguity is that there are two overlapping but distinct forms of "bad faith."

First, there is § 1307(c) "bad faith," which is recognized in this circuit as a "cause" to dismiss or convert a chapter 13 case, even though it is not formally listed as one of the ten circumstances enumerated at § 1307(c)(1)

15

through (10). *Eisen* 14 F.3d at 470. A determination of § 1307(c) "bad faith" does not require egregious behavior.

Then, there is § 349(a) "bad faith," which does require determination of egregious behavior. *Leavitt*, 171 F.3d at 1224.

In other words, § 1307(c) "bad faith" may be sufficient to dismiss but is not necessarily sufficient to establish the § 349(a) "bad faith" needed to dismiss "with prejudice."

## C. Standard for § 349(a) "Bad Faith"

Our analysis of § 349(a) "cause" is driven by the Ninth Circuit decision in *Leavitt*, which set out a four-factor totality-of-circumstances inquiry for assessing § 349(a) "cause" for providing that a dismissal be determined, as a matter of discretion, to be with prejudice for bad faith and egregious conduct. *Leavitt*, 171 F.3d at 1223-26. In turn, *Leavitt* agreed with the Fourth Circuit's *Tomlin* analysis. *Id., citing Tomlin*, 105 F.3d at 937.

As the bankruptcy court correctly ruled, the governing standard for § 349(a) bad faith is totality of circumstances determined through a four-consideration matrix:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor only intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

*Leavitt*, 171 F.3d at 1224 (cleaned up).

Consideration of the totality of the circumstances means that these four considerations are not essential elements and need not be computed with arithmetic precision. For instance, a bankruptcy could be found to have been filed in § 349(a) "bad faith" even though the debtor had no prior bankruptcy case.

Nor is malice or fraudulent intent required. *Leavitt*, 171 F.3d at 1224-25. But, although not required, the presence of either malice or fraudulent intent could be probative of egregious behavior.

We agree with the bankruptcy court's observation that the application of the *Leavitt* analysis in Duran's case turned on objective factors that did not necessitate subjective fraudulent intent or ill will toward creditors.

Although the Ninth Circuit panel in *Leavitt* was focused on § 349(a) "cause" in the context of § 1307(c) and ignored the debtor's right to dismiss a chapter 13 case under § 1307(b), we perceive no principled reason why the *Leavitt* analysis of § 349(a) "cause" should not apply equally to all case dismissals, including § 1307(b) dismissals. *Leavitt*, 171 F.3d at 1223 (omitting reference to § 1307(d)). We so hold.

### III.
### Flexible Procedure for § 349(a) Issues

The § 349(a) "for cause" issue whether to provide that dismissal be with prejudice to future discharge of any debt that could have been

discharged in the dismissed case may surface in such a variety of circumstances that the rules of procedure leave much to the discretion of courts on a case-by-case basis.

## A. Timing

The rules and statute are silent about when a § 349(a) prejudice issue must raised.

While the questions of dismissal and of imposing a condition of prejudice pursuant to § 349(a) ordinarily are, as in this instance, considered in tandem, it is conceivable that circumstances may warrant raising the § 349(a) question after the fact of dismissal. What such circumstances might be can be left to another day.

## B. Due Process

A minimum requirement for every § 349(a) matter that would prevent future discharge is that there must be notice and an opportunity for a hearing.

It is axiomatic that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their views. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The severity of a Strong-Form § 349(a) dismissal "with prejudice" dictates that bankruptcy courts proceed in such matters with the caution reserved for egregious circumstances and a full opportunity for hearing

consistent with consideration associated with a complaint to deny discharge under § 727. *Leavitt*, 209 B.R. at 941-42, *citing* 3 Collier on Bankruptcy ¶ 349.02[2]; *Ellsworth*, 455 B.R. at 920, 922-23.

## C.    Chapter 13 Dismissals

The rules of procedure govern § 1307(b) dismissals as of right. Rule 1017(f)(2) directs that a debtor who wishes to exercise the § 1307(b) "right" to dismiss a chapter 13 case must proceed by motion filed and served as required by Rule 9013. Fed. R. Bankr. P. 1017(f)(2).

The need for a § 1307(b) motion is two-fold. First, the motion needs to be screened for eligibility because § 1307(b) dismissal as of right is not permitted if the case previously was converted under §§ 706, 1112, or 1208. Second, the motion provides a platform for considering the § 349(a) question of the effect of the dismissal.[4]

A § 1307(b) motion is governed by Rule 9013 and "is not automatically a contested matter under Rule 9014." Fed. R. Bankr. P. 1017(f)(2), Advisory Committee Note to 1987 Amendment.

In contrast, a § 1307(c) motion to dismiss for "cause" is always a contested matter governed by Rule 9014. Fed. R. Bankr. P. 1017(f)(1). The § 1307(c) motion must be filed and served as a Rule 9014 contested matter.

---

[4]    In contrast, conversion to chapter 7 as of right under § 1307(a) is automatic upon filing a notice of conversion and does not require a motion or a court order. Fed. R. Bankr. P. 1017(f)(3). Mischief attendant to conversion from chapter 13 to chapter 7 can be policed by the chapter 7 trustee and through the provision of § 348(f)(2) regarding property of the estate after a bad faith conversion. 11 U.S.C. § 348(f)(2).

The rules do not prescribe any particular procedure for raising a § 349(a) issue varying the effect of the dismissal. In this instance, the filing of Gudino's opposition to Duran's § 1307(b) motion to dismiss in which Gudino advocated dismissal with prejudice under § 349(a) is what created the actual dispute that transformed the Rule 9013 motion proceeding into a Rule 9014 contested matter. Fed. R. Bankr. P. 9014, Advisory Comm. Note.[5]

Whatever procedural alternatives may exist for raising a § 349(a) issue in the various chapters and procedural postures that may apply (e.g., a separate contested matter motion, perhaps filed even after dismissal), Gudino's opposition to the debtor's § 1307(b) motion was a correct procedure for presenting the § 349(a) issue to the court.

The bankruptcy court thereafter treated the dispute as a Rule 9014 contested matter. This was also a correct procedure.

In deciding the dispute, the court was entitled to rely on the entire record. *Ellsworth*, 455 B.R. at 920.

---

[5] At the time Rule 9014 was promulgated, the Bankruptcy Rules Advisory Committee explained:

> Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, the filing of an objection to a proof of claim, to a claim of exemption, or to a disclosure statement creates a dispute which is a contested matter. Even when an objection is not formally required, there may be a dispute. If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.

Fed. R. Bankr. P. 9014, Advisory Comm. Note.

Duran elected to rest on the record that had been made throughout the case, including the two days of evidentiary hearing on the abortive chapter 13 confirmation. Moreover, he did not object to the procedure employed by the court.

In sum, we perceive no error in the procedure leading to the dismissal of Duran's case with prejudice.

## IV.
## Burdens

Duran contends that the objecting creditor had the burden of persuasion on the § 349(a) question of dismissal "with prejudice" because it is tantamount to denying a discharge under § 727. We agree.

A fair reading of the bankruptcy court's ruling reveals that the court, also, placed on Gudino the ultimate burden of persuasion and correlative risk of nonpersuasion. The court was persuaded.

### A.    Statutory Presumption in § 349(a)

Section 349(a) functions as a statutory presumption. Unless the court, for "cause," orders "otherwise," dismissal does not bar discharge in a later case of debts that were dischargeable in the case dismissed. 11 U.S.C. § 349(a); Fed. R. Evid. 301.

The § 349(a) "unless" clause creates such a powerful presumption that it routinely is observed in silence and need not be independently considered and expressly addressed by the court. The proponent of

ordering "otherwise" under § 349(a) has the burden of raising the issue of "cause" in the first instance.[6]

The proponent of an order "otherwise," thus, has the burden to produce evidence in the first instance to support the existence of "cause" to order that dismissal should bar future discharge of debts that were dischargeable in the case dismissed. In the absence of such evidence, the § 349(a) statutory presumption applies. *See* 21B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Evidence § 5122 (2d ed. 2020); *see also* 2 Barry Russell, Bankruptcy Evidence Manual § 301.71.

If evidence is produced sufficient in the view of the court potentially to constitute "cause" to vary the § 349(a) statutory presumption, then the burden of production shifts to the debtor to produce evidence to explain why dismissal should be without prejudice, i.e. to justify the debtor's conduct.

However, the ultimate burden of persuasion, as distinguished from the burden of producing evidence, reposes on the person opposing application of the statutory presumption for two reasons.

First, there is a direct analogy to the § 727 adversary proceeding that would produce the same result as the § 349(a) dismissal "with prejudice." In § 727 objections to discharge, the objector to discharge has the burden of

---

[6]  To be sure, the court may also act sua sponte. We express no view in this appeal regarding details of how to exercise the court's sua sponte power beyond the axiomatic requirement of notice and opportunity for a hearing.

persuasion. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010), *citing Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir. 2009); Fed. R. Bankr. P. 4005.

Second, in § 349(a) issues, the emphasis on egregious conduct in decisions such as *Leavitt* and in the Collier treatise similarly implies allocating the ultimate burden of persuasion to the proponent of varying the § 349(a) statutory presumption.

**B.     Quantum of Evidence Required**

The quantum of evidence required to vary the § 349(a) statutory presumption is likewise influenced by the emphasis on egregious circumstances and the similarity to the consequences of denial of discharge. In an adversary proceeding seeking to deny discharge under § 727, the plaintiff's burden of persuasion is preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991) (dicta); *Retz,* 606 F.3d at 1196; *Khalil*, 379 B.R. at 172.

Whether the egregious or bad faith requirements imply a quantum of evidence needed for § 349(a) dismissal with the Strong Form of "with prejudice" that would be greater than preponderance of evidence can be left for another day.

Here, the findings by the bankruptcy court as it applied the *Leavitt* totality of the circumstances analysis show that it was convinced by more

than a preponderance of evidence that Duran was responsible for what it determined to be a "huge" and egregious manipulation of bankruptcy process in bad faith. The evidence in this instance was overwhelming. We express no view regarding burdens for weaker forms of exercises of discretion under § 349(a).

## C.  "Good Faith" and "Bad Faith" Compared

An instructive coincidence in this case is that the bankruptcy court faced two different good faith/bad faith decisions at about the same time in circumstances that illustrate the contrast in burdens of proof.

The salient point is that good faith and bad faith are neither binary nor mutually exclusive. A party who does not prove good faith is not necessarily acting in bad faith. Conversely, a party who does not prove bad faith has not proved good faith.

The elements of chapter 13 plan confirmation required Duran, as the plan proponent, to prove that the plan was filed in good faith and not by any means forbidden by law and that Duran's action in filing the petition was in good faith. 11 U.S.C. § 1325(a)(3) & (7). The court was not persuaded that Duran carried that burden in either respect. However, Duran had abandoned his confirmation effort before a formal ruling was required.

The § 349(a) analysis, as Duran argues, required Gudino to prove bad faith and egregious conduct. Proof of bad faith did not necessarily follow

from the shortcomings of Duran's confirmation evidence addressed to § 1325(a)(3) and (7) good faith.

Rather, Gudino's burden was carried by overwhelming competent, admissible evidence in the overall record of the case, to which evidence there was no objection. The evidence, which included judicial notice of the record, was probative of misconduct including a scheme to shelter real and personal property assets by transfer to an insider, false presentation of the debtor as a mere farmhand, false statements denying prepetition transfers, false statements about prepetition income, false statements about nonexistence of federal tax debt, and false testimony.

Once Gudino presented that evidence, the burden of going forward shifted to Duran to provide evidence supporting his defense. But the ultimate burden of persuasion, and correlative risk of nonpersuasion, on the § 349(a) issues always reposed with Gudino. Fed. R. Evid. 301. The court, as trier of fact, was not persuaded that Duran's defense neutralized the force of Gudino's evidence and was persuaded that the totality of circumstances warranted findings of bad faith and egregious conduct worthy of dismissal "with prejudice," as permitted by § 349(a).

## V.
### Judicial Discretion

The question, thus, becomes whether the bankruptcy court abused its discretion when it dismissed Duran's case with prejudice.

As noted, a bankruptcy court abuses its discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record. *Hinkson*, 585 F.3d at 1262. The legal standard is the totality of circumstances inquiry mandated by *Leavitt* for determining whether "cause" exists under § 349(a) to dismiss with prejudice. *Leavitt*, 171 F.3d at 1224.

Here, the court considered each of the four *Leavitt* factors separately in its oral findings.

Two of the factors, the history of filings and dismissals and whether the debtor intended only to defeat state court litigation, were regarded as neutral.

The other two factors, however, overwhelmingly favored dismissal "with prejudice." The debtor had misrepresented facts in his petition, schedules, and plan and unfairly manipulated the Bankruptcy Code in a "huge" and inequitable manner. The court ruled the debtor's conduct was egregious and in bad faith.

The bankruptcy court applied the correct legal standard. Its factual findings are supported by the record. Nor are they illogical or implausible.

It follows that the court did not abuse its discretion in ordering that there was cause under § 349(a) to order that the voluntary dismissal of the chapter 13 case requested by Duran pursuant to § 1307(b) be "with

prejudice" to any future effort to discharge any of the debts that might have been discharged in his dismissed chapter 13 case.

## VI.
## Harmless Errors in Order

The order dismissing the case contains two harmless errors worthy of note, but neither affects substantial rights.

The first error is the false recital that "Creditor Luz Gudino's Motion to Dismiss this case with prejudice as a bad faith filing had been pending under prior submission to the Court following evidentiary hearings before the Court on June 6, 2019 and June 20, 2019."

Nothing in the record reflects a Motion to Dismiss by Gudino. Any such motion would have had to have been made as a motion to dismiss for "cause" under § 1307(c) and Rule 1017(f)(1). What we have found are protestations about Duran's bad faith and arguments that the case should be dismissed. But argumentative fulminations, without making a procedurally correct motion, are no more than invitations for the court to act sua sponte. Gudino had no pending motion to dismiss.

Nor do the court's findings reflect consideration of the § 1307(c) analysis of the best interests of creditors and the estate. 11 U.S.C. § 1307(c); *Nelson*, 343 B.R. at 675. Since the facts of this case reveal plainly avoidable transfers potentially of significant value that a chapter 7 trustee might be able to capture, the court would have grappled with that problem if it had been acting under § 1307(c).

The error in the false recital is harmless because it does not affect any party's substantive rights. Fed. R. Civ. P. 61, *incorporated by* Fed. R. Bankr. P. 9005.

Gudino responded to Duran's § 1307(b) motion with an "opposition" under § 349(a) that any dismissal be with prejudice. Applying Rule 1001, we construe Gudino's "opposition" to constitute a motion under § 349(a) that any dismissal be ordered to have been with prejudice. Fed. R. Bankr. P. 1001.

At the time of the hearing, it was a foregone conclusion that the chapter 13 case would be dismissed. Nobody took a position contrary to dismissal. Rather, the focus of the hearing was on the *Leavitt* factors governing § 349(a) "cause" for imposing a condition of prejudice to the dismissal, which was the precise question raised by Gudino.

The second error is that the order purports to deny Duran's § 1307(b) motion and then, without invoking any alternative statutory authority, dismiss the case.

It was error to deny Duran's § 1307(b) motion. The court did not say in its oral findings that it was denying the § 1307(b) motion. That motion was procedurally correct, adequate to the task of dismissal, and threatened no abuse of process. No other motion was before the court, nor were the court's findings consistent with § 1307(c).

To be sure, it would also have been procedurally correct for the court to have asserted its own inherent authority to override Duran's §1307(b) motion. But, one would expect the court to have said it was so acting.

As with the erroneous recital, the error inherent in denying Duran's § 1307(b) motion does not affect any party's substantive rights. Hence, it constitutes harmless error.[7]

***

Duran, recognizing the futility of his effort to confirm a chapter 13 plan and conceding that the IRS proof of claim made him ineligible for chapter 13 relief, filed his § 1307(b) motion to dismiss as of right. But Nemesis was not willing to let Duran absquatulate.[8]

[7] So long as errors are harmless in the sense that they do not affect substantive rights of any party, we may correct them without need to reverse or to remand.

Our authority to modify an order on appeal derives from Rule 9005, which incorporates Civil Rule 61, with the additional proviso that the court may order "correction of any error or defect or the cure of any omission which does not affect substantial rights." Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61.

We have on more than one occasion exercised this Rule 9005 authority. *E.g.*, *Lakhany v. Khan (In re Lakhany)*, 538 B.R. 555, 563 (9th Cir. BAP 2015); *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551-52 (9th Cir. BAP 2002). While this is another occasion in which it might be appropriate to do so, we perceive no useful purpose in so acting because nobody is likely to be confused by the defective order.

[8] The Panic of 1837 led to the Bankruptcy Act of 1841 and the verb, "absquatulate":

The newly independent Republic of Texas gained a reputation as a popular destination for dishonorable failures. . . . "Gone to Texas," abbreviated in "three ominous letters G.T.T." became a shorthand symbol found on abandoned businesses. . . .

(continued...)

Gudino asked the court to find "cause" to order under § 349(a) that the dismissal be "with prejudice" to future discharge of any debt that could have been discharged in the case.

There was adequate notice and opportunity for hearing consistent with the ability to be heard in defense of an objection to discharge under § 727. The court, allocating the burden of persuasion to the creditor, applied correct procedure and analysis to conclude that the debtor's conduct was egregious, inequitable, and in bad faith for purposes of § 349 "cause." The evidence and the record reveal that the decision to dismiss "with prejudice" was not an abuse of discretion.

In the end, the debtor's "right" to dismiss under §1307(b) does not immunize the debtor from the consequences of an adverse § 349(a) determination.

AFFIRMED.

---

(...continued)

> Absconding to squat on western lands and perambulate from one property to another had become so common a practice that writers invented a new verb to describe this process: to absquatulate. Like shinning and dunning, absquatulation was a form of personal panic.

Jessica M. Lepler, The Many Panics of 1837, at 137 (Cambridge Univ. Press 2013).

See also "Absquatulate," The Oxford English Dictionary: "v. Also absquotilate. [A factitious word, simulating a L. form (cf. *abscond, gratulate*) of American origin, and jocular use.] To make off, decamp." 1 The Oxford English Dictionary 53 (J.A. Simpson & E.S.D. Weiner eds., 2nd ed. 1989). First printed example, 1837-40. *Id*.